Opinion
REESE, J.
The following statement of the case and statement of facts are furnished, courtesy of the People’s brief.
I. Statement of the Case
This is a defense appeal following a nonjury trial in which appellant (hereinafter defendant) was found guilty of two violations of Penal Code section 12025, subdivision (a), carrying a concealed weapon within a vehicle, and two violations of Penal Code section 12031, subdivision (a), carrying a loaded weapon within a vehicle.
The case arose when a misdemeanor complaint was filed in the Municipal Court for the Los Angeles Judicial District charging defendant in four *Supp. 35 counts with the above-named offenses. Defendant, appearing through counsel, was duly arraigned and entered pleas of not guilty. The matter was set for trial on October 7, 1982. On September 28, 1982, defendant filed a notice of a motion to suppress. Defendant’s motion was heard and denied on October 7, 1982, in division 16 of the municipal court, the Honorable Richard Adler, Judge presiding. The case was then continued for trial to October 18, 1982.
On October 21, 1982, the matter was assigned for trial to division 57, the Honorable Susan E. Andelson, Judge presiding. Defendant personally waived his right to jury trial, and the matter was heard by the judge sitting as trier of fact. Following testimony and argument, defendant was found guilty as charged on all counts. He was then placed on unsupervised probation for a period of 24 months on various terms and conditions, including a requirement that he spend 21 days in jail. A timely notice of appeal was filed and the terms and conditions of probation were stayed.
II. Statement of Facts
Prior to the commencement of the trial before Judge Andelson, defendant stipulated that both weapons involved were functioning and operable. Defendant further offered to stipulate that the weapons were in the vehicle; however, the People declined to enter into such a stipulation.
Norman Lee, a Los Angeles police officer, then testified that on August 20, 1982, at approximately 11 p.m., he was on duty in a marked black and white police car eastbound on Sunset Boulevard approaching Hayworth. Lee was in uniform, and was accompanied by his partner, who was also in uniform and who was driving the police car. At that time, Lee observed a tan Dodge van northbound on Hayworth driving very slowly. The van failed to stop at the posted stop sign at the intersection of Hayworth and Sunset, and proceeded to turn right onto Sunset and stop at the curb in a red parking zone.
A woman, whom Lee and his partner believed to be a prostitute because of prior observations, including two made earlier that evening, approached the van and appeared to be having a conversation with its occupant. In the belief that a solicitation for an act of prostitution might be occurring, Lee alighted from the car and walked towards the van, while his partner drove the police car to the front of the van.
Lee walked up the passenger’s side of the van and asked the woman what her purpose was. Apparently startled, she jumped away from the door. At that point, Lee saw the van’s driver, identified as defendant, who appeared *Supp. 36 to be shocked at the presence of a uniformed police officer. Lee could plainly see that defendant had his right hand on a shiny brown-gripped handgun and observed defendant attempt to hide it behind the engine compartment cover area.
Lee jumped back and told his partner that defendant had a gun. Lee’s partner immediately ordered defendant out of the van and Lee thereupon performed a cursory search for weapons on defendant, finding none. Meanwhile, Lee’s partner retrieved a .45 caliber automatic handgun with brown grips from the engine compartment area. The gun was examined and found to be loaded. Lee’s partner continued to search within the driver’s reach of the van and retrieved another handgun, a .357 caliber Derringer, from underneath and directly behind the driver’s seat. That weapon was also loaded.
The People rested, and defendant testified in his own behalf. After first declaring that he was 40 years old and a citizen of the United States, defendant asserted that the van he had been driving on the date in question was his residence. He informed the court that, at the end of July 1980, he had surrendered the premises of an apartment in Redondo Beach and that, since that time, he had used his van for sleeping, eating, bathing, and entertainment purposes. He further stated that he had acquired the van in 1977, at which time it was registered with the Department of Motor Vehicles as a “motor home.” Defendant went on to describe the interior of the van, which he stated held a bed, a refrigerator, a television set, a shower, cooking facilities, and various other accoutrements. A series of photographs, identified as defendant’s exhibits Cl through CIO, taken by defendant in 1980, were described as representative of the interior of the van at the time of his arrest. In response to a question posed by the court, defendant stated that on weekdays he parked the van at his business, located at 16412 Hawthorne Boulevard in Lawndale, and received mail either at his business or at a post office box he maintained in Los Angeles. Defendant admitted, however, that he had purchased a home in San Diego on which escrow had closed in June and which he occupied since the “latter part of August.”
Officer Lee testified in rebuttal. He stated that he had examined the interior of the van briefly when it was impounded and that he did not observe most of the appliances and furniture mentioned by defendant. Defendant resumed the stand on surrebuttal and reiterated that the van was furnished and equipped on the date of his arrest as he had previously described. Defendant was then found guilty on all counts.
III. Defendant’s Contention on Appeal
On appeal, defendant contends as follows:
(1) The trial court erred in ruling as a matter of law that the provisions of Penal Code sections 12026 and 12031 which excuse unlicensed posses *Supp. 37 sion of loaded or concealed weapons in a “place of residence” have no application to such possession in the “cab” section of a vehicle used and/ or equipped as a residence while it is in transit;
(2) The trial court abused its discretion in denying trial counsel’s motion to reopen the defense and to present further testimony on the residential character and usage of defendant’s house-car van at the time of his arrest; and
(3) Trial counsel’s failure to foresee the arresting officer’s testimony that defendant’s vehicle was not equipped for residential use at the time of his arrest, and his commensurate failure to call two available defense witnesses whose testimony would have corroborated defendant’s testimony and impeached the officer’s testimony, operated to deprive defendant of effective assistance of counsel.
IV. Discussion
A. Defendant’s Contention of “Residential Vehicle” Exception to Penal Code Sections 12026 and 12031
1. Defendant’s primary basis of prejudicial error is that the trial court erred in ruling as a matter of law that the provisions of Penal Code sections 12026 and 12031 which permit unlicensed possession of loaded or concealed weapons in a “place of residence” have no application to such possession in the “cab” section of a vehicle used and/or equipped as a residence while it is in transit. We find no merit in defendant’s contention and concur in the trial judge’s ruling.
Section 12026 of the Penal Code states: “Section 12025 shall not be construed to prohibit any citizen of the United States over the age of 18 years who resides or is temporarily within this State . . . from owning, possessing or keeping within his place of residence or place of business any pistol, revolver, or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess, or keep any such firearm at his place of residence or place of business shall be required of him.”
Subdivision (a) of section 12031 of the Penal Code, in relevant part, reads: “[Ejvery person who carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city ... is guilty of a misdemeanor.”
Subdivision (1) of section 12031 of the Penal Code reads: “Nothing in this section shall prevent any person from having a loaded weapon, if it is *Supp. 38 otherwise lawful, at his place of residence, including any temporary residence or campsite.”
Defendant’s esoteric argument projects the concept that the phrase “place of residence” as used in the above statutes cannot be rationally interpreted to delineate a fixed geographic location. He relies exclusively upon this court’s ruling in People v. Marotta (1981) 128 Cal.App.3d Supp. 1 [180 Cal.Rptr. 611] to substantiate his position. We state at page 6 of Marotta, “The term ‘place of business’ has no set or established meaning in California case or code law. Importing into these words the limitation of a fixed geographic location is unsupported in the law. In California’s highly mobile culture many business enterprises have no fixed geographic location. Even such staid institutions as banks often use mobile facilities. [Fn. omitted.]” In Marotta we held that “place of business” included a taxicab. The very definition of “taxicab” lends credence to such a holding. Webster’s Third New International Dictionary (1971) at page 2345, defines “taxicab” as follows: “a chauffeur-driven automobile available on call to carry a passenger between any two points (as within a city) for a fare . . . . ” In the instant case, defendant is urging our adopting a doctrine that interprets “place of residence” as used in the relevant statutes before us to include motor homes, or house cars or vans. He proffers the position that the manner of design and equipment installed determines the issue, and not the use of the motor home, house car or van for transportation purposes on public streets; he presses that the controlling factor in determining whether the vehicle is or is not “a place of residence” within the purview of the instant statutes rests upon whether the vehicle is utilized either permanently or partially as a place of dwelling. While participation in such interesting rhetorical game play is inviting, we decline to do so. Nor shall we indulge in extensive analysis of the dilemma presented by defendant’s possession of loaded or concealed weapons in his house car or van when legally parked on private property and while being actively used for residential purposes, i.e., sleeping, cooking, entertaining, etc., as those supposititious facts are not before us.[1]
*Supp. 39 Instead, we confine our treatment of this case to the facts disclosed by the record. Those facts are: Defendant, driving his house van, turned a corner without stopping for a stop sign, and pulled into a no-parking zone on a public street where he was conversing with a female when approached by the arresting officers. As to whether defendant’s vehicle at this moment was a “place of residence,” we do not turn to the dictionary, as “[lexicographers are not generally the authors of our laws. If they were, perhaps blind reference to dictionary definitions of a statute’s terms would adequately substitute for the process of judicial interpretation.” (People v. Heffner (1977) 70 Cal.App.3d 643, 651 [139 Cal.Rptr. 45].) Applicable is the principle of statutory construction that code provisions must be “construed according to the fair import of their terms, with a view to effect its objects and to promote justice.” (Pen. Code, § 4.)
The primary purpose of the Weapons Control Law is to control the threat to public safety in the indiscriminate possession and carrying about of concealed and loaded weapons. We hold that that purpose would be frustrated by interpreting “place of residence” to include any motor vehicle while “in transit” no matter what use is made thereof when parked on private property. We find this to be a practical, common sense construction of the relevant statutes. “ ‘The complexities of the social problems dealt with by the Legislature requires that a practical construction be given to the language employed by the draftsmen of legislation lest their purposes be too easily nullified by overrefined inquiries into the meaning of words.’ ” (People v. Heffner, supra, 70 Cal.App.3d at p. 649.)
Defendant’s house car or van, as with any house car or van, has two essential functions: (1) to serve as a means of transportation or a motor vehicle whenever on a public street or public property or in transit, and (2) the capability to function as a “home” or “place of residence” when legally upon private property and being utilized as a “place of residence.” In our day of ultra mobility, one may consider his jet airplane his “place of residence” if he so desires, but when the plane is airborne, he is subject to FAA rules and regulations, just as he is subject to airport regulations when based at an airport; one may consider his yacht his “place of residence,” but he is subject to maritime laws when upon the sea, and to harbor regulations when berthed; and one may consider his house car or van his home or “place of residence,” but when he drives his car or van on the public streets or highways or causes said car or van to be thereupon while he is present, he is subject to arrest and successful prosecution for possession of concealed or loaded firearms should he be arrested with those items discovered in his car or van under circumstances similar to those before us.
We hold that when in transit or upon a public street or thoroughfare, as in the instant case, a house car’s driver violates Penal Code sections *Supp. 40 12025 and 12031 when having within his vehicle, without a license to so carry, concealed or loaded firearms.
We find the trial judge to have most poignantly designated the core of this case when she stated after oral argument, and before ruling in the matter, the following: “If, in fact—and I don’t necessarily find that I believe that Mr. Foley was temporarily residing in his vehicle behind his business during this period. But if in fact [he] were, the fact of the matter is that he was not using it at that time. It was in transit. The exception refers to a residence or a campsite, even if it be temporary. Well, if one were traveling to that temporary residence or campsite with their guns to protect themselves, they would in fact have to have those guns both unconcealed and unloaded, [f] I find that he was in fact using it as a vehicle at the time; that under no instance would the placement of the gun in the cab of the vehicle as opposed to the living quarters of the vehicle fit properly within that exception.”
B. Defendant’s Other Contentions
We have carefully considered defendant’s other contentions concerning the trial judge’s denial of defendant’s motion to reopen and to present further testimony; his claim of ineffective assistance of counsel; the alleged lack of substantial evidence to support the finding that the .357 Derringer was concealed; and that the “place of residence” exceptions render the relevant statutes unconstitutionally void for vagueness. We find each to be without merit.
We note in the People’s brief on appeal that concession is made that the People failed to prove that the .45 caliber handgun was concealed within the van, therefore, the judgment on this count should be reversed.
Judgment is affirmed, except as to count I, which is reversed. The matter is remanded to the trial court with directions to dismiss count I and for resentencing on the three remaining counts.
Foster, P. J., and Bernstein, J., concurred.

We differentiate the case at bench from People v. Carney (1983) 34 Cal.3d 597 [194 Cal.Rptr. 500, 668 P.2d 807] without difficulty. There, the high court was considering defendant’s rights under article I, section 13 of the California Constitution and the Fourth Amendment to the United States Constitution against unreasonable searches and seizures. In that case a warrantless search of the residential compartment of defendant’s motor home was made by the arresting officers. The motor home had been under the officer’s observation for a considerable length of time before they approached it on the commercial parking lot where it was parked with windows shuttered. Here, the contraband (the loaded gun) was in plain view in the defendant’s hand while he was seated in the driver’s compartment of his motor van. No constitutional search and seizure issues face us; we are concerned herein with the interpretation of state statutes, sections 12026, 12031, subdivision (a) and 12031, subdivision (7) of the California Penal Code.