STATE OF CONNECTICUT *v.* CHRISTOPHER M. VICKERS
(SC 16376)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued December 7, 2001—officially released May 21, 2002

*Ralph D. Sherman,* for the appellant (defendant).

*Eileen F. McCarthy,* assistant state's attorney, with whom, on the brief, were *Kevin T. Kane,* state's attorney, and *Michael F. Kennedy,* assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. At issue in this appeal is the meaning of the phrase "place of business" as that term is used in General Statutes (Rev. to 1997) § 29-35 (a),[1] and whether

---

[1] General Statutes (Rev. to 1997) § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . . " Section 29-35 (a) was revised in 1999, pursuant to No. 99-212 of the 1999 Public Acts, to become gender neutral. Section 29-35 (a) now provides in relevant part: "No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

the statute provided the defendant with adequate notice that his conduct was prohibited.

The defendant, Christopher M. Vickers, was arrested for carrying a pistol without a permit in violation of § 29-35. He moved to dismiss the information for insufficiency of cause, claiming that the statute's use of the phrase "place of business" includes one's place of employment and, therefore, his conduct was not a violation of the statute. After the trial court, *Dyer, J.*, denied his motion to dismiss the information against him, the defendant entered a plea of nolo contendere, conditioned upon his ability to appeal the denial of his motion to dismiss, pursuant to General Statutes § 54-94a[2] and Practice Book § 61-6.[3] The trial court subsequently rendered judgment, sentencing him to one year incarceration, suspended after six months, with a one year term of probation.

The defendant appealed from the judgment to the Appellate Court and this court transferred the appeal to itself pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). The sole issue before us on appeal is whether the trial court improperly denied the defendant's motion to dismiss based upon its reading of the "place of business" permit exception of § 29-35 (a) to mean only premises that contain a business in which

---

[2] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied . . . the motion to dismiss. . . ."

[3] Practice Book § 61-6 (a) (2) (i) provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied . . . the motion to dismiss. . . ."

the defendant has a proprietary or possessory interest, not a location at which the defendant is merely an employee. We affirm the judgment of the trial court.

The state and the defendant stipulated to the following facts as set forth in the trial court's memorandum of decision. "On October 6, 1998, the defendant was employed as a welder by Unified Sports, Inc., and was working at his job at the company's manufacturing plant in Waterford. On that date, the defendant was summoned to the supervisor's office at the plant. There, Waterford police found that the defendant was wearing a firearm in a holster upon his person. The weapon located on the defendant's person was a pistol, as defined by [General Statutes] § 29-27.

"The defendant did not have a permit to carry a pistol (pursuant to [General Statutes § 29-28 (b)])[4] on October 6, 1998. He was arrested by Waterford police on the felony charge which is the subject of this motion.

"The parties have also stipulated that the defendant was not an owner or proprietor of Unified Sports, Inc., and did not have any ownership interest in the premises where he was working on October 6, 1998."[5]

---

[4] General Statutes § 29-28 (b) provides in relevant part: "Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority or upon the application of any bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any state or subdivision of the United States, such chief of police, warden or selectman may issue a permit to such person to carry a pistol or revolver within the jurisdiction of the authority issuing the same, provided such authority shall find that such applicant intends to make no use of any pistol or revolver which such applicant may be permitted to carry thereunder other than a lawful use and that such person is a suitable person to receive such permit. . . ."

Although § 29-28 (b) has been amended since 1998, the date of the defendant's arrest, the changes are not relevant to this appeal. References in this opinion to § 29-28 (b) are to the current revision of the statute.

[5] We are necessarily limited to these facts in our decision because there is no transcript from the hearing on the defendant's motion to dismiss included in the record before us on appeal.

We note at the outset that the defendant is not challenging the constitutionality of § 29-35 (a). Instead, he is challenging the constitutionality of his prosecution. He argues that he was denied fair warning as to the scope of the statute and that, as a result, was deprived of due process because he was convicted on the basis of conduct that he reasonably could not have known fell within the purview of the statute. Specifically, he claims that: (1) the phrase "place of business," reasonably construed, includes an individual's place of employment; and (2) if it means what the trial court interpreted it to mean, that interpretation cannot constitutionally be applied to him. The state contends, to the contrary, that the "place of business" exception set out in § 29-35 (a) is limited to businesses in which the individual has a proprietary, controlling or possessory interest and, therefore, does not include place of employment in its scope. The state argues that this is the only reasonable interpretation of the statute and that the defendant reasonably should have known that his conduct was proscribed. We conclude that the state's interpretation properly reflects the legislature's intent in its enactment of § 29-35 (a). We also conclude that this interpretation may constitutionally be applied to the defendant.

We utilize well established principles of statutory interpretation in analyzing the defendant's claim. "Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory [interpretation], our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles govern-

ing the same general subject matter." (Internal quotation marks omitted.) *Tighe* v. *Berlin*, 259 Conn. 83, 89, 788 A.2d 40 (2002). Once we ascertain the proper meaning of the statute, we then must undertake due process analysis to assess whether this meaning was apparent enough so as to give the defendant fair warning that his conduct was proscribed.

In order to construe the meaning of the statute, we first examine the language of the statute itself. The phrase "place of business" is not explicitly defined in either the text of § 29-35 (a), or anywhere else in the General Statutes. Therefore, we must consider the meaning of the phrase as used in § 29-35 (a) as an issue of first impression. "Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended." (Internal quotation marks omitted.) *Gelinas* v. *West Hartford*, 225 Conn. 575, 584, 626 A.2d 259 (1993). "Where a statute does not define a term it is appropriate to look to the common understanding expressed in the law and in dictionaries." *Caldor, Inc.* v. *Heffernan*, 183 Conn. 566, 570–71, 440 A.2d 767 (1981).

The defendant correctly cites Black's Law Dictionary's definition of "place of business" as "[t]he location at which one carries on his business *or* employment. . . ." (Emphasis added.) Black's Law Dictionary (6th Ed. 1990). The defendant argues that this is reflective of the common usage of the phrase. Our analysis, however, does not end there. We consider the syntax of the sentence containing the phrase in order to construe its intended meaning in this particular context. The structure of the sentence in § 29-35 (a) indicates that the phrase "place of business" is to be read in conjunction with the preceding phrase: "*his dwelling house or* . . . ." (Emphasis added.) The use of the possessive "his" informs the reader that both "dwelling house" and "place of business" are possessory or proprietary in

nature and that the two are parallel in terms of "his" relationship to each. One's dwelling house is one's own place of abode; similarly, one's place of business is the place in which one conducts one's own business. One does not have a possessory or proprietary interest in one's place of *employment*; rather, one has such an interest in one's place of *business*. Thus, individuals in the places in which they have a possessory or proprietary interest, such as one's own home or the premises in which the business one owns or controls is located, are exempt from the general law requiring one to have a permit for a handgun.

This distinction and the exception it creates are further clarified in other portions of the statute. The remainder of the statutory section delineates the specific jobs that also are excluded from the permit requirement.[6] The inclusion of this list of exempted occupations informs us that the legislature did not intend the phrase "place of business" to refer to all employees at all places of employment. Logically, if all employees were exempt, there would be no need for the specific itemization of the occupations that are also exempt. "We have stated that [u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended [a] list to be exclusive." (Internal quotation marks omitted.) *Doucette* v. *Pomes*, 247 Conn. 442, 457, 724 A.2d 481 (1999). The exemptions listed, therefore, support the argument that the phrase "place

[6] General Statutes (Rev. to 1997) § 29-35 (a) provides in relevant part: "The provisions of this subsection shall not apply to the carrying of any pistol or revolver by any sheriff, parole officer or peace officer of this state, or sheriff, parole officer or peace officer of any other state while engaged in the pursuit of his official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise . . . ."

of business" is not to be construed generally, referring to any and all employees at their places of employment. Such construction would render the list of exceptions meaningless, for they would already be considered exceptions under the broad expanse of place of employment. We conclude that the statutory exception is extended only to individuals within their dwelling houses or in their place of business in which they have a proprietary or controlling interest and to those who fall under the specific occupations so delineated.

The defendant cites *State* v. *Feltovic*, 110 Conn. 303, 147 A. 801 (1929), for the proposition that the phrase "place of business" is not limited to a business in which one has a possessory or proprietary interest. In *Feltovic*, the victim, the manager of a store owned by the Great Atlantic and Pacific Tea Company, was "assailed by the accused with a deadly weapon, in his place of business, in such manner as to have justified in him the belief that he was in imminent danger of great bodily harm; under such circumstances he was not obliged to retreat but had the right to defend himself and his employer's property even to the extent of taking his assailant's life." Id., 311–12. *Feltovic*, as the state correctly points out, is inapposite to the present case. In *Feltovic*, the phrase "place of business" did not arise incidental to any of the issues raised in the present case and, therefore, does not provide any precedential analytic framework for the issue in the present case.[7] Here, the issue is the proper limitations to be placed upon the carrying of unregistered handguns. In *Feltovic*, the phrase was used as an element to be weighed by the jury when determining if the defendant had acted in self-defense

[7] In *State* v. *Feltovic*, supra, 110 Conn. 309–10, the issue was whether the jury should have been instructed that, if the defendant had abandoned his plan to rob the store, they could find him not guilty or guilty of a lesser degree of murder. The victim's presence in the store was arguably relevant to the issue of whether he had the duty to retreat or the right of self-defense. Id., 311.

in response to the victim's aggressive act. Id., 311. Thus, the two cases are not related and the use of the phrase "place of business" in *Feltovic* does not illuminate the use of that phrase in § 29-35 (a).

We next examine the intent of the legislature as revealed by the statute's legislative history. Section 29-35 originated in 1923, as Senate Bill No. 265. Chapter 252, § 9, of the 1923 Public Acts provided: "No person shall carry any pistol or revolver in or upon any vehicle or upon his person, except when such person shall be within his dwelling house or place of business, without a permit to carry the same issued as hereinbefore provided." The statute has been revised several times in its seventy-five year history, but the language "place of business" has remained unchanged. Similarly, the purpose of the statute has remained consistent: to legislate the prohibition of unregistered handguns in the public sphere.

This intent is further clarified by the remarks of Senator Howard T. Owens, Jr., in the 1981 dialogue regarding the introduction of the one year mandatory minimum sentence for violations of § 29-35 (a). "This bill is addressed to the problem that there are fifty-five million hand guns in our country today, one for every fourth person. It is estimated [that] by the year 2000, there will be a hundred million hand guns here in the United States. Hand gun homicides total[ed] 32,000 in 1980, an average of 88 a day or just under four an hour. Every law enforcement officer in this country predicts hand gun homicides will continue to escalate unless we do something about it and we have an obligation to do something about it here today. Let's send the message out that we don't want hand guns in our towns, in our communities, in our cities roaming [like] this. . . . The [Federal Bureau of Investigation] has gone on record in favor of this type of legislation because hand guns

are designed to kill people." 24 S. Proc., Pt. 10, 1981 Sess., pp. 3148–49.

This intentional limiting and restricting of the proliferation of unlicensed handguns has been previously recognized by the Appellate Court. "Section 29-35 is concerned with prohibiting the use of unlicensed weapons in public. House Bill No. 5652, 24 S. Proc., [supra, pp. 3150–51]. Section 29-35 allows a person to keep an unlicensed pistol or revolver in her home or business location." *State* v. *Hopes*, 26 Conn. App. 367, 375, 602 A.2d 23 (1991), cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We agree with the Appellate Court and further conclude that the "place of business" exception of § 29-35 (a) reasonably cannot be construed to encompass the broad scope of all employed persons. Such a construction would undermine the clear intent of the legislature to limit the number of unlicensed handguns in the public arena.

Further, the legislative hearings regarding § 29-35 raise the relevance of similar statutory schemes of our sister jurisdictions and lead to our reliance upon them for our interpretation. Citing the need for states to initiate a response to the rampant use of handguns, Representative John J. Woodcock emphasized that "[two] of our neighbors, Massachusetts and New York have enacted strict handgun possession laws, with mandatory sentences for carrying concealed, unregistered handguns." 24 H.R. Proc., Pt. 12, 1981 Sess., p. 3851. Senator Owens also discussed the Massachusetts law at length, citing a Northeastern University study that showed there had been a decrease in gun assaults after the enactment of the law. "[T]here . . . was a significant decline in gun assaults . . . the use of hand guns and crimes committed by hand guns decreased appreciably—a 54% decline in gun related homicides." 24 S. Proc., supra, p. 3149.

There are several other jurisdictions with similar prohibitions against unregulated handguns that limit the "place of business" exception to businesses in which there is a possessory or proprietary interest. See, e.g., *Scott* v. *United States*, 392 A.2d 4, 6 (D.C. App. 1978) (exception limited to those with "controlling . . . interest in the business premises"); *Berkley* v. *United States*, 370 A.2d 1331, 1333 (D.C. App. 1977) ("The common understanding of 'place of business' read in context with 'dwelling house' . . . is one of a protectible possessory interest. . . . [T]he exception is applicable only to those who have a controlling, proprietary or possessory interest in the business premises in question."); *People* v. *Free*, 112 Ill. App. 3d 449, 453, 445 N.E.2d 529 (1983) (exception extended to "proprietor's fixed place of business"); *People* v. *Clark*, 21 Mich. App. 712, 716, 176 N.W.2d 427 (1970) (exception created to allow people to defend place in which they have possessory interest); *State* v. *Valentine*, 124 N.J. Super. 425, 427, 307 A.2d 617 (1973) ("place of business" not extended to cover manager of bar owned by another); *People* v. *Francis*, 45 App. Div. 2d 431, 432, 358 N.Y.S.2d 148 (1974) ("place of business" implies possession and right to defend); *Commonwealth* v. *Carr*, 334 Pa. Super. 459, 462, 483 A.2d 542 (1984) (exception limited to "persons who have a controlling, proprietary, or possessory interest in their place of business"). These cases illustrate their respective jurisdiction's statutory intent to restrict the presence of unlicensed handguns in the public sphere. Because we conclude that this is the same purpose behind § 29-35 (a), we are persuaded to follow the example of our sister states who have interpreted the phrase "place of business" to mean that in which one has a possessory or proprietary interest.[8]

[8] The defendant relies on two cases from other jurisdictions, claiming that they should inform our disposition of the present case. Both cases, *Peoples* v. *State*, 287 So. 2d 63, 66 (Fla. 1973), and *Poston* v. *State*, 132 Tex. Crim. App. 317, 319, 104 S.W.2d 516 (1937), involved employees who had been authorized by their employers—the owners of the businesses in question—

We now turn to the defendant's due process claim. The defendant claims that he was deprived of his right to due process because the phrase "place of business" is ambiguous, and that such ambiguity denied him fair warning that his conduct was proscribed by § 29-35 (a). "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." (Internal quotation marks omitted.) *Bouie* v. *Columbia*, 378 U.S. 347, 351, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964). We disagree with the defendant's claim that his due process rights were violated because we conclude that the construction of § 29-35 (a) was foreseeable pursuant to the principle espoused in *Bouie* and its progeny.

"There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. . . . Second . . . the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." (Citations omitted; internal quotation marks omitted.) *United States* v. *Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997). Third, "[t]here can be no doubt that a deprivation of

to carry the unlicensed handguns. This authorization and act of agency distinguishes those cases from the case before us. We note, however, that both cases deem it permissive for one to carry an unlicensed handgun when acting *in place of* the owner of a business. There is still the requirement, therefore, that the business being protected was being protected for the benefit of the one with the proprietary interest. The defendant in the present case makes no such argument.

the right of fair warning can result . . . also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie* v. *Columbia,* supra, 378 U.S. 352. "In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States* v. *Lanier,* supra, 267.

The United States Supreme Court recently has addressed the fair warning doctrine previously articulated by the Supreme Court in *Bouie.* In *Rogers* v. *Tennessee,* 532 U.S. 451, 457, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001), the court stated: "Reviewing decisions in which we had held criminal statutes void for vagueness under the Due Process Clause, we noted that this Court has often recognized the basic principle that a criminal statute must give fair warning of the conduct that it makes a crime. . . . Deprivation of the right to fair warning . . . can result both from vague statutory language and from an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face. . . . For that reason, we concluded that [i]f a judicial construction of a criminal statute is *unexpected and indefensible* by reference to the law which had been expressed prior to the conduct in issue, [the construction] must not be given retroactive effect." (Citations omitted; emphasis added; internal quotation marks omitted.)

We conclude that the defendant had fair warning that his conduct was proscribed by § 29-35 (a) and that the trial court properly denied his motion to dismiss. Our construction of § 29-35 (a) is neither unexpected nor indefensible and is, therefore, binding upon the defendant in this case. See id. It is consistent with the meaning of the phrase suggested by both the syntax of the specific sentence and the overall structure of the statute, the legislative intent as articulated through the legisla-

tive hearings, and our sister jurisdictions' interpretations of similar provisions.

The judgment is affirmed.

In this opinion the other justices concurred.