[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
Before the court is the defendant's motion to dismiss on the ground that he is statutorily exempt from prosecution under General Statutes § 29-35 (a) because a taxicab is a place of business for purposes of the statute. For the following reasons, the court denies the defendant's motion to dismiss without prejudice.
 I FACTS
The court bases the following summary on the parties' joint stipulation of facts, filed on January 2, 2002, and on the information under which the defendant was charged. On June 15, 2001, the defendant was working as a taxicab driver in the city of New Haven. At about 11:00 p.m., the defendant picked up a passenger who, while attempting to rob him, stabbed the defendant in the neck, resulting in a three inch laceration. The defendant shot and killed the assailant, then drove away from the scene and disconnected his two-way radio. Meanwhile, the New Haven police determined that a cab from the Metro Cab Company (Metro Cab) was involved in the shooting and contacted the company, but Metro Cab was unable to contact the defendant. Eventually, the defendant contacted Metro Cab and, when he was informed that the police were searching for him, he gave his location and waited for the police to arrive. At the time of his arrest at 4:32 a.m. on June 16, 2001, the defendant advised the police that the handgun was in the trunk.
The defendant was charged with carrying a handgun without a permit in violation of General Statutes § 29-35 (a). As to the handgun, the parties have stipulated to the following: CT Page 7055-x
The defendant does not possess a permit to carry a handgun. During work, he regularly carries the handgun in a pack worn at his waist. On June 15, 2001, the defendant placed the handgun in the pack at his waist at the beginning of his shift at 1:00 p.m., where it remained until the time of the shooting. The defendant now moves to dismiss the information on the ground that he falls under the statutory place of business exception to § 29-35 (a).
 II DISCUSSION
General Statutes § 29-35 (a) provides, in relevant part, that "[n]o person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section29-28." Since no Connecticut court has yet addressed the issue of whether the phrase "place of business" in § 29-35 (a) includes taxicabs, this is an issue of first impression. Further, because the meaning of the term "place of business" is not defined in the statute, this is a question of statutory interpretation.
"[S]tatutory interpretation is a question of law." (Internal quotation marks omitted.) Collins v. Colonial Penn Ins. Co., 257 Conn. 718, 728,778 A.2d 899 (2001). "When we construe a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) Id., 728-29.
"We construe each sentence, clause or phrase to have a purpose behind it. . . . In addition, we presume that the legislature intends sensible results from the statutes it enacts. . . . Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results. . . ." (Citations omitted; internal quotation marks omitted.) Collins v. Colonial Penn Ins. Co., supra, 257 Conn. 728-29. "Words in a statute must be given their plain and ordinary meaning . . . CT Page 7055-y unless the context indicates that a different meaning was intended. . . . No word or phrase in a statute is to be rendered mere surplusage. . . . In applying those principles, we keep in mind that the legislature is presumed to have intended a reasonable, just and constitutional result." (Citations omitted; internal quotation marks omitted.) Gelinas v. WestHartford, 65 Conn. App. 265, 276, 782 A.2d 769, cert. denied,258 Conn. 926, 783 A.2d 1028 (2001). Furthermore, "statutory exceptions are to be strictly construed." Commission on Human Rights Opportunitiesv. Sullivan Associates, 250 Conn. 763, 787, 739 A.2d 238 (1999). "When the statute in question is one of a criminal nature, we are guided by additional tenets of statutory construction. First, it is axiomatic that we must refrain from imposing criminal liability where the legislature has not expressly so intended. . . . Second, [c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant. . . . Finally, unless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." (Citations omitted; internal quotation marks omitted.) State v. Davis,255 Conn. 782, 788-89, 772 A.2d 559 (2001).
As noted above, § 29-35 (a) does not define the term "place of business." The state argues that the court may not interpret the term to include taxicabs because § 29-35 (a) must be read in conjunction with General Statutes § 29-38 (a). Section 29-38 (a) provides that "[a]ny person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be fined not more than one thousand dollars or imprisoned not more than five years or both. . . ." The state argues that because the legislature has specifically made it illegal to carry a weapon in a motor vehicle, this indicates an intent to treat motor vehicles differently from fixed places of business in the weapons statutes. The Connecticut legislature, however, could have specified, as have a number of state legislatures, that persons carrying handguns in their fixed places of business are excepted from the requirements of § 29-35 (a), but it did not. See, e.g., Ala. Code § 13A-11-74; Idaho Code § 18-3302 (7); 720 Ill. Comp. Stat. § 5/24-1(a)(4); Ind. Code § 35-47-2-1; Kan. Stat. § 21-4201 (a)(4); N.J. Stat. Ann. § 2C: 39-6 (e); N.D. Cent. Code §§ 62.1-03-01(2)(b); 18 Pa. Cons. Stat. Ann. § 6106(a)(1) and (2); S.C. Code Ann. § 16-23-20 (8); Wash. Rev. Code §9.41.050. Further, while the court agrees that § 29-38 (a) signifies a particular legislative concern about the possession of handguns in motor vehicles, it does not necessarily follow that the court should read a "motor vehicle exception" into the place of business exception of § 29-35 (a). The inclusion of an exception for places of business in § 29-35 (a) indicates a legislative intent that business owners should have the freedom to protect their property. As is often the case in the consideration of gun control statutes, this issue involves competing, equally important, public policies. Though the statutes must be read consistently with each other, it is unclear whether § 29-38
(a) should be read to limit the place of business exception to § 29-35
(a). Moreover, the state's suggestion that the court should resolve this ambiguity in favor of the state goes against the principle of statutory construction cited above, that in construing criminal statutes, ambiguities are resolved in favor of the defendant. This principle of statutory construction, in fact, suggests that the ambiguity created by §§ 29-35 (a) and 29-38 (a) should be resolved against the state by finding that a taxicab is a place of business for purposes of the exception to § 29-35 (a).
Moreover, statutory construction requires the court to interpret a statute consistently with existing relevant statutes. At the time that the legislature enacted the original version of the carrying permit law, however, § 29-38 (a) did not yet exist. The place of business exception has been present in the carrying permit law since its enactment in 1923. In its original form, the statute prohibited carrying a handgun both "upon one's person" and "in or upon a vehicle." "No person shall carry any pistol or revolver in or upon any vehicle or upon his person, except when such person shall be within his dwelling house or place of business, without a permit to carry the same issued as hereinbefore provided." (Emphasis added.) See P.A. ch. 252, §§ 9, 10. The wording of the statute remained virtually identical in the 1930 Revision of the General Statutes.[1] Thus, both prior versions of § 29-35 (a) indicate that the legislature intended the place of business exception to apply to motor vehicles. The motor vehicle and "upon the person" provisions first appear in separate statutes in the 1935 Cumulative Supplement to the 1930 Revision of the General Statutes. See General CT Page 7055-z Statutes §§ 1009c and 1010c. No legislative history is available for Public Acts 1935, No. 330, through which the separate provisions were created.
While none of the legislative histories accompanying the amendments made to the carrying permit law specifically discuss the meaning of the place of business exception, they do make clear the policy objectives of the statute. The legislative history of Public Acts 1981, No. 81-222 is particularly helpful in understanding the purpose of the statute.[2]
During the Senate floor discussion of House Bill No. 5652, An Act Concerning Gun Control, which later became Public Act 81-222, Senator Owens explained the purpose of the legislation. "It's a warning to those that might go out and use that hand gun for some illicit reason whether they be drinking at the time or not, over some small thing that precipitates action, to leave their hand gun at home because if they do and they're caught with it, that they have the problem of this mandatory sentence." 24 S. Proc., Pt. 10, 1981 Sess., p. 3146. During the House discussion of the bill, Representative Jaekle also outlined the purpose of § 29-35 (a). "If you want to keep your gun in your home or place of business, you don't even need a permit, but if you want to carry it out on the street where you and I and our constituents walk, by golly, get a permit. That's what our present law says. That's what this bill seeks to enforce." 24 H.R. Proc., Pt. 12, 1981 Sess., pp. 3845-46.
The Supreme Court has on several occasions discussed the legislative intent behind the gun control statutes. In Dwyer v. Farrell, 193 Conn. 7,12, 475 A.2d 257 (1984), the court noted that "General Statutes [§§]29-28 through 29-38 clearly indicate a legislative intent to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or temperament necessary to be entrusted with a weapon." (Internal quotation marks omitted.) Id. Even more recently, the court held that the place of business exception applies "only to individuals . . . in their place of business in which they have a proprietary or controlling interest." State v. Vickers,260 Conn. 219, 226, ___ A.2d ___ (2002) (affirming the trial court's holding that the place of business exception does not apply to an employee who has no ownership or proprietary interest in his place of work). In Vickers, the court noted that "the purpose of the statute has remained consistent: to legislate the prohibition of unregistered handguns in the public sphere." Id., 227.
Because the court in Vickers was concerned only with a fixed place of business, Vickers provides some precedential value, but not a dispositive CT Page 7055-aa "analytic framework for the issue in the present case."[3] Id., 226. The court's discussion of the legislative intent behind the gun control statutes, however, is helpful in understanding the purpose of the place of business exception. By holding that a defendant must have a proprietary or controlling interest in the business in order to invoke the exception, and by emphasizing that the primary concern of the legislature is to keep guns out of the public sphere, the court implicitly recognizes the two competing interests that must be balanced: that of the public at large in limiting the number of guns traveling in the public sphere and that of property owners in being able to protect their property. The Supreme Court did not define the phrase "public sphere." This court, therefore, looks to the "common understanding expressed in the law and in dictionaries." (Internal quotation marks omitted.) Id., 224. "Public" means "[o]pen to all; notorious. Common to all or many; general; open to common use. Belonging to the people at large; relating to or affecting the whole people of a state, nation, or community; not limited or restricted to any particular class of the community." Black's Law Dictionary (6th Ed. 1990).
A mere employee has no property interest to be balanced with the public interest. A person who has a proprietary or controlling interest in the place of business in question, however, has an interest in protecting that property. When such a person is within his place of business, he is not in the public sphere. Therefore, his interest in protecting his property outweighs the public interest in gun control. Though taxicabs are mobile, that fact alone does not necessarily make them fall within the public sphere. A taxicab is not open to common use. Just as any other business owner, a cab driver has the right to exclude the public from the inside of the cab. Once a passenger is inside the cab, the driver has the right to require a passenger to conform to certain rules set by the driver-for example, by placing a "no smoking" sign in the vehicle. Therefore, as long as the cab driver can show that he has a proprietary or controlling interest in the taxicab, the court sees no reason to treat cab drivers differently from other business owners.
Further, the court finds support for this conclusion in the caselaw of other jurisdictions, where courts have considered the issue of whether a taxicab is a place of business for purposes of gun permit laws. In the absence of Connecticut case law directly on point, the court may look to the law of other jurisdictions for guidance. Scinto v. Sosin,51 Conn. App. 222, 230, 721 A.2d 552, cert. denied, 247 Conn. 963,724 A.2d 1125 (1999). Virtually every state in the union has passed a statute requiring permits for carrying handguns. Additionally, almost all CT Page 7055-ab of those states incorporate a place of business exception into the permit requirement. Only a few states, however, have addressed the issue of whether a taxicab is a place of business for purposes of the exception. The handgun permit statutes of the various states with place of business exceptions fall into three general categories: 1) those that specify an exception for a fixed place of business; 2) those that contain an exception for a person's place of business, but contain some modifying language within the statute enabling the courts to interpret the phrase "place of business"; and 3) those that merely refer to an exception for a person's place of business.[4] Since Connecticut's statute falls under the third category, those states whose statutes also fall under this third category are the most relevant. Therefore, the court looks to New York and California law, since both of those states have statutory exceptions similar to that of Connecticut and both states have addressed the issue of whether a taxicab is a place of business under the exception.
Because the Connecticut Penal Code is modeled after the New York Penal Code, it is appropriate to look first to New York law. State v. Henry,253 Conn. 354, 363, 752 A.2d 40 (2000); see also State v. Desimone,241 Conn. 439, 456, 696 A.2d 1235 (1997); State v. Havican, 213 Conn. 593,601, 569 A.2d 1089 (1990); State v. Hill, 201 Conn. 505, 516-17,523 A.2d 1252 (1986). N.Y. Penal Law § 265.02(4) (formerly § 265.05(2)) provides, in relevant part, that "[a] person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person possesses any loaded firearm. Such possession shall not constitute a violation of this section if such possession takes place in such person's home or place of business." A violation of § 265.05 is a class D felony. N.Y. Penal Law § 265.01 (formerly § 265.05(3)) sets out the crime of criminal possession in the fourth degree, which is a class A misdemeanor. "A person is guilty of criminal possession of a weapon in the fourth degree when (1) [h]e possesses any firearm. . . ." There is no place of business exception for the misdemeanor offense.
The current scope of the place of business exception in § 265.02 (4) is unclear. A number of New York courts have interpreted § 265.02 (4) and § 265.01(1) to mean that possession of a handgun by a taxi driver in a taxicab falls under the place of business exception in § 265.02(4), and, therefore, is merely a misdemeanor in violation of § 265.01(1). For example, in People v. Anderson, 74 Misc.2d 415,419, 344 N.Y.S.2d 15, 19 (N.Y. Crim. Ct. 1973), a handgun was discovered, during a routine traffic stop, under the cab driver's brake pedal. The court held that the felony charges against the driver of a CT Page 7055-ac gypsy cab should be reduced to misdemeanor charges under § 265.05 (now §§ 265.01 and 265.02) because "[t]he defendant's gypsy cab constitutes his place of business within the meaning of the statute." Id.; see also People v. Santiago, 74 Misc.2d 10, 11, 343 N.Y.S.2d 805
(N.Y.Sup.Ct. 1971) (holding that the place of business exception applied where the driver kept the handgun in a cigar box in the taxicab.) Most recently, in People v. Santana, 77 Misc.2d 414, 415, 354 N.Y.S.2d 387
(N.Y. Crim. Ct. 1974), the court applied the exception to a cab driver who carried a revolver on his person and had exited the vehicle to be searched by a police officer when the handgun was discovered. TheSantana court explained the policy reasons behind application of the exception to cab drivers. "Considering the much publicized, extra-hazardous nature of this one-man business, the wisdom of the Legislature in enacting section 265.05, subd. 2 readily is apparent and the efficacy of the Santiago and Anderson rulings is indisputable. On this reasoning, it is of no significance if the cab be fleet-owned, privately-owned, medallion, `gypsy'[5] or otherwise." People v.Santana, supra, 354 N.Y.S.2d 389.
The Appellate Division, in People v. Francis, 45 App.Div.2d 431,358 N.Y.S.2d 148 (1974), addressed the issue of whether a postal worker carrying a handgun at his place of employment should be able to invoke the place of business exception under § 265.05(2). In the course of its discussion, the court, in dicta, recognized that the Court of Appeals had previously held that a taxicab is a place of business for purposes of the statute, but relied on People v. Levine, 42 App.Div.2d 769,346 N.Y.S.2d 756 (1973), to conclude that a taxicab is not a place of business under the exception. People v. Francis, supra, 358 N.Y.S.2d 150-51. Levine, however, is a one line opinion which provides no explanation of the court's holding. In fact, the Francis
dissent calls attention to the lack of persuasive value of Levine by arguing that Levine is readily distinguishable because, inter alia, "the defendant did not display the I firearm in his possession in connection with his operation of his taxicab as a cab for hire, but when he became involved in an argument with another motorist." People v. Francis, supra, 358 N.Y.S.2d 154 n. 2. On appeal, the Court of Appeals, in Peoplev. Francis 38 N.Y.2d 150, 341 N.E.2d 540, 379 N.Y.S.2d 21 (1975), not only declined to address the scope of the place of business exception, but specifically stated that it affirmed the order of the Appellate Division, "but not for the reasons stated in either opinion." People v.Francis, supra, 379 N.Y.S.2d 23.
Subsequently, several New York courts have relied on the dicta in CT Page 7055-adPeople v. Francis, supra,45 App.Div.2d 431, to hold that a taxicab is not a place of business under the exception in § 265.02(4). See, e.g.,People v. Khudadzade, 156 App.Div.2d 384, 548 N.Y.S.2d 336 (1989), cert. denied, 75 N.Y.2d 814, 551 N.E.2d 1242 (1990); People v. McWilliams,96 Misc.2d 648, 409 N.Y.S.2d 610 (1978). Other courts, however, have recognized that, after the opinions of the Appellate Division and the Court of Appeals in Francis, the law in this area is unsettled. See, e.g., People v. Malave, 124 Misc.2d 210, 476 N.Y.S.2d 422 (1984); Peoplev. Allison, 117 Misc.2d 463, 458 N.Y.S.2d 496 (1983); Solomon v. Artuz, 2000 U.S. Dist. Lexis 8837 at *16 (S.D.N.Y.). Currently, then, whether New York considers taxicabs to fall under the scope of the place of business exception in § 265.02(4) is far from clear.
The California rule has changed since its first articulation in Peoplev. Marotta, 128 Cal.App.3d Supp. 1, 180 Cal.Rptr. 611 (Cal.App. Dep't Super. Ct. 1981). In Marotta, the court held that the place of business exception applies to taxicabs.[6] The court reasoned that "[i]n any ordinary sense the taxicab here is as much a place of business as a store in a fixed location. This is where the cab driver worked and collected his fees. The driver had no other business location which the cab served to facilitate, such as a store's delivery truck, where the truck is not the location of the enterprise, but merely the means to facilitate the store's business." Id., 4. Further, the court explained, "[t]he term `place of business' has no set or established meaning in California case or code law. Importing into these words the limitation of a fixed geographic location is unsupported in the law. In California's highly mobile culture many business enterprises have no fixed geographic location. Even such staid institutions as banks often use mobile facilities." Id., 5. "Had the Legislature intended to limit the `place of business' exception to fixed geographic locations, or had it intended to exclude vehicles from the compass of the words `place of business,' it could easily have done so." Id., 6. In People v. Foley, 149 Cal.App.3d Supp. 33, 38, 197 Cal.Rptr. 533 (Cal.App. Dep't Super. Ct. 1983), the court once again discussed the application of the place of business exception to a taxicab. "In Marotta we held that `place of business' included a taxicab. The very definition of `taxicab' lends credence to such a holding. Webster's Third New International Dictionary (1971) at page 2345, defines `taxicab' as follows: `a chauffeur-driven automobile available on call to carry a passenger between any two points (as within a city) for a fare. . . .'" Id.
Subsequently, however, the California Court of Appeal questioned the reasoning of Marotta in People v. Wooten, 168 Cal.App.3d 168, CT Page 7055-ae214 Cal.Rptr. 36 (1985). In holding that a bounty hunter who stored guns in his glove compartment and carried another handgun on his person was not entitled to the place of business exception under § 12026, the court first noted that the case was distinguishable from Marotta. "While taxicab drivers must do business in their cabs, bounty hunters do not. Their job is to get out of their car and arrest bail jumpers, not to run over them. The vehicle is simply a means to transport the bounty hunter. Unlike a taxi driver whose work cannot be done without a vehicle, bounty hunters may leave their own cars behind and use airplanes, buses, trains or taxis to pursue bail jumpers." People v. Wooten, supra,168 Cal.App.3d 173. The court went on, however, to criticize Marotta. "[T]he reasoning of the Marotta court is not persuasive. The clear legislative purpose of section 12025 is to prohibit the carrying around of concealed weapons. Section 12026 provides an exception for possession in one s residence or place of business. The natural meaning of the term `place of business' is a fixed location, simply because almost all businesses are conducted in some office, store or other building. When a business is mobile, one generally says that the business is not conducted in any particular place, but in an area." Id. Finally, the Wooten court further clarified the meaning of the phrase "place of business" in its discussion of whether the exception was unconstitutionally vague. Finding that the exception did not suffer from vagueness, the court noted that "[a] person of `common intelligence' does not have to guess at the meaning of Penal code section 12026. Anyone reading its terms would see that its exemption for residences and places of business does not extend to the vehicle used by every businessman who must travel in the course of his business. . . . The phrase `place of business' has a narrower meaning than each of its component terms. It is used to describe stores, offices, warehouses, etc. where business is conducted. These are not indefinite expanses and are not mobile pieces of personal property." Id., 174-75. While Wooten does not directly overrule Marotta, it does establish a new rule for interpreting the place of business exception in § 12026. Wooten makes clear that the general rule in California is that vehicles, which are clearly "mobile pieces of property," are not places of business for purposes of the exception. Id. Because the Court of Appeal stopped short of directly overruling Marotta, however, and because the court went out of its way to distinguish bounty hunters from cab drivers in arriving at its holding in Wooten, California law on the issue of whether taxicabs in particular are places of business I for purposes of § 12026 is still unsettled.
While the New York and California rules provide no clear answers to the question of whether a taxicab is a place of business for purposes of CT Page 7055-af § 29-35 (a), they do provide some guidance. This Court finds the reasoning of those cases finding that taxicabs are places of business for purposes of the exception to be persuasive, particularly in the light of the Supreme Court's focus in Vickers on whether the defendant has a proprietary or controlling interest in the place of business. A cab driver has just as much interest in protecting his taxicab as the owner of a retail store has in protecting the premises of his store. Further, as noted in People v. Santana, supra, 354 N.Y.S.2d 387, the business of driving a taxi is particularly hazardous, as the facts of this case illustrate, so cab drivers have much more than a theoretical interest in protecting their property. The court is also convinced that it is significant that a cab driver uses his taxicab for more than merely traveling from one location to another. It is the traveling itself that constitutes the business of driving a cab.
For three reasons, then, the court finds that a taxicab may be a place of business for purposes of § 29-35 (a): 1) in light of the above policy reasons as clarified in California and New York law; 2) becauseVickers suggests a policy of balancing the public interest in safety against private property interests in interpreting the place of business exception; and 3) because the court must construe the ambiguity created by reading General Statutes §§ 29-35 (a) and 29-38 (a) together in favor of the defendant.
As noted above, the Connecticut place of business exception applies, however, only to persons who are "in their place of business in which they have a proprietary or controlling interest. State v. Vickers, supra, 260 Conn. 219. "[T]he term `owner' is one of general application and includes one having an interest other than the full legal and beneficial title. . . . The word owner is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right. . . . It is not a technical term and, thus, is not confined to a person who has the absolute right . . . but also applies to a person who has possession and control. . . ." (Citations omitted; internal quotation marks omitted.) Doty v. Shawmut Bank, 58 Conn. App. 427, 432, 755 A.2d 219
(2000). In this case, the defendant has at least some level of ownership interest in the cab. On this issue, the parties have stipulated to the following facts: The defendant, as an independent contractor, leased the taxi from Nutmeg Leasing, Inc., with the option to purchase the vehicle. While the taxi is registered to an entity called Transportation General, the defendant pays the registration fee for the cab and pays all taxes and insurance through Metro Cab. Additionally, the defendant pays for repairs and maintenance of the cab, as well as any fines, tickets or CT Page 7055-ag towing charges incurred through the operation of the cab. The cab is stored at the defendant's residence when he is not working. Moreover, though the lease agreement states that the leased vehicle is to be utilized "primarily for business purposes," the defendant has used the cab for personal trips to New York on several occasions with Metro Cab's knowledge. Based on these stipulations of fact, the court finds that the defendant is not an employee of Nutmeg Leasing, Inc., Transportation General or Metro Cab Company, but to the contrary, is an independent contractor who has a proprietary interest in the taxicab. Therefore, under the facts and circumstances of this case, the defendant's taxicab is his place of business for purposes of § 29-35 (a).
Even though the defendant's taxicab is a place of business under §29-35 (a), it is premature to grant the defendant's motion to dismiss because a material question of fact remains as to whether the defendant carried the handgun solely inside his taxicab within the relevant time frame. In order for the defendant to be found guilty of carrying a pistol or revolver without a permit in violation of § 29-35 (a), the state must prove beyond a reasonable doubt "that the defendant carried a pistol or revolver upon the defendant's person while outside his dwelling house or place of business, and . . . that the defendant did not have a permit." (Emphasis added.) R. Leuba R. Fracasse, Connecticut Selected Jury Instructions: Criminal (1998) § 8.13. The relevant time frame for the defendant's alleged violation of § 29-35 (a) is that the offense occurred "on or about June 16, 2001." The information charging the defendant with violating § 29-35 (a) states merely that the defendant carried a handgun without a permit "on or about June 16, 2001." Also, the uniform arrest report does not narrow the time frame of the offense any further, merely stating that the date and time of arrest was June 16, 2001, at 4:32 a.m. Based on the parties' joint stipulation of facts, all that the court knows for certain is that on the day of the shooting, June 15, 2001, "the defendant placed the gun in the pack at his waist at the beginning of his shift at 1:00 p.m., which was approximately ten hours before the shooting." (Joint Stipulation of Facts, January 2, 2001, Item 3.) Thus far, the state has had no opportunity to present evidence that during those ten hours preceding the shooting, during the shooting itself or in the approximately five hours between the shooting and the arrest, the defendant carried his handgun on his person outside
the confines of his place of business. Nor has the state had the opportunity even to make the initial determination that it has sufficient evidence on this issue to go forward. Until the state has been afforded the opportunity to present evidence in order to meet its burden of proof on this factual issue, or until the state has an opportunity to make the CT Page 7055-ah initial determination that it has sufficient evidence in light of this decision to justify the continued prosecution of this information, it is premature to grant the defendant's motion to dismiss.
 III CONCLUSION
For the foregoing reasons, the court denies the defendant's motion to dismiss without prejudice.
BY THE COURT
Harper, J.