[No. D051215. Fourth Dist., Div. One. Dec. 19, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL FLORES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I. and II. of the Discussion.

## COUNSEL

David Blair-Loy, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Scott C. Taylor and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**IRION, J.**—A jury convicted Miguel Flores of possession of a firearm by a person prohibited from possessing a firearm (Pen. Code, § 12021, subd. (c)(1)),[1] carrying a concealed firearm (§ 12025, subd. (a)(2)), carrying a loaded firearm in a public place (§ 12031, subd. (a)(1)), and resisting a peace officer (§ 148, subd. (a)(1)). The trial court sentenced him to three years of probation.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Flores appeals, contending that his convictions must be reversed because (i) the trial court failed to instruct the jury on the defenses of necessity and duress; (ii) the trial court erroneously instructed the jury regarding the criminal intent required for the offense of carrying a loaded firearm; and (iii) the firearm convictions violate his federal constitutional right to bear arms. As discussed below, we find these contentions to be without merit.

Flores also argues that the trial court erred in requiring payment of probation costs and attorney fees as a condition of probation. We agree, as does the Attorney General, that the trial court's probation order must be modified to delete the requirement that Flores pay probation costs and attorney fees as a condition of probation. In all other respects, we affirm.

## FACTS

On January 22, 2006, around 10:00 p.m., San Diego Police Officers Joel Tien and Arnie Ambito were riding in a marked patrol car. They observed a small white car briefly driving in the wrong direction on a one-way street. The officers followed the car and activated their lights and sirens. The car did not stop and the officers gave chase. The white car slowed as it passed Grant Hill Park. Flores then opened the passenger side door and fled into the park as the car drove off.

Officers Tien and Ambito chased Flores on foot while a police helicopter hovered overhead. During the chase, Officer Tien yelled, "San Diego Police, stop, don't move!" Flores continued to run, while reaching with his right hand toward his waistband. When they reached a crest of a hill, Tien was able to tackle Flores. Tien handcuffed Flores and rolled him over. Tien pulled up Flores's shirt and found a .38-caliber handgun in Flores's waistband. The gun was loaded with six live rounds.

## DISCUSSION

Flores raises a number of challenges to his convictions. We address each challenge separately below.

### I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 568.

### III.

#### *Flores's Convictions Do Not Violate His Federal Constitutional Rights*

■ In a supplemental brief, Flores contends that his convictions are invalid in light of the United States Supreme Court's recent decision in *District of Columbia v. Heller* (2008) 554 U.S. ___ [171 L.Ed.2d 637, 128 S.Ct. 2783] (*Heller*), which held that the Second Amendment protects an "individual['s] right to possess and carry weapons in case of confrontation." (*Heller*, at p. ___ [128 S.Ct. at p. 2797].) We disagree.

Prior to the decision in *Heller*, it was well settled in our courts that state laws regulating the possession of firearms were not vulnerable to constitutional challenge. (See *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481 [97 Cal.Rptr.2d 334, 2 P.3d 581] [" '[i]t is long since settled in this state that regulation of firearms is a proper police function' "]; *Galvan v. Superior Court* (1969) 70 Cal.2d 851, 866 [76 Cal.Rptr. 642, 452 P.2d 930] ["The claim that legislation regulating weapons violates the Second Amendment has been rejected by every court which has ruled on the question."]; *In re Rameriz* (1924) 193 Cal. 633, 652 [226 P. 914] (*Rameriz*) [stating that the Legislature is "entirely free to deal with the subject" of firearm regulation].)[4]

In *Heller*, the United States Supreme Court ruled that the District of Columbia's "absolute prohibition of handguns held and used for self-defense in the home" as well as its "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense" violated the Second Amendment to the federal Constitution. (*Heller, supra*, 554 U.S. at p. ___ [128 S.Ct. at p. 2822].) In reaching its conclusions, the court repeatedly stressed the broad sweep of the local prohibitions at issue in the case. For example, the court emphasized that the District of Columbia's

---

[4] In addition, our Supreme Court has held that the Second Amendment does not apply to the states. (See *Rameriz, supra*, 193 Cal. at pp. 651–652 ["this amendment offers no protection against the . . . state governments but applies only to the . . . federal government"].) Despite the fact that this 80-year-old holding has been significantly undermined by modern developments in federal constitutional law (see *People v. Rappard* (1972) 28 Cal.App.3d 302, 306 [104 Cal.Rptr. 535]; cf. *Heller, supra*, 554 U.S. at p. ___ [128 S.Ct. at p. 2816] [recognizing that "[f]or most of our history, the Bill of Rights was not thought applicable to the States"]), the Attorney General urges us to include the Second Amendment's purported nonapplication to the states as a basis of our ruling. We need not decide the issue, however, because we conclude that even if the Second Amendment does apply to the states, it would not invalidate the statutes at issue here. We also note that Flores does not contend that his convictions violate any provision of the California Constitution.

"handgun ban amounts to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for th[e] lawful purpose" of self-defense. (*Id.* at p. ___ [128 S.Ct. at p. 2817].) "The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute." (*Ibid.*) Given these circumstances the court concluded, "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to "keep" and use for protection of one's home and family' " violated the Second Amendment. (*Ibid.*, fn. omitted.)

The firearm statutes that Flores challenges in the instant case have nowhere near the broad sweep of the statutes at issue in *Heller*. Flores was convicted of violating three firearms laws: (i) possession of a firearm by a person prohibited from possessing a firearm (§ 12021, subd. (c)(1)); (ii) carrying a concealed firearm (§ 12025, subd. (a)(2)); and (iii) carrying a loaded firearm in a public place (§ 12031, subd. (a)(1)). Flores fails to point to any authority in the state or federal courts interpreting *Heller* as invalidating statutes analogous to these, and our reading of *Heller* convinces us that nothing in that opinion requires such a result.

In *Heller*, the court emphasized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." (*Heller, supra,* 554 U.S. at p. ___ [128 S.Ct. at p. 2816]; see also *People v. Bland* (1995) 10 Cal.4th 991, 1004, fn. 6 [43 Cal.Rptr.2d 77, 898 P.2d 391] [recognizing that even if the 2d Amend. protects an individual's right to keep and bear arms, "the United States Supreme Court has not treated that right as absolute"].) The court then provided a nonexhaustive list of "presumptively lawful regulatory measures" under the Second Amendment, including "longstanding prohibitions on the possession of firearms by felons." (*Heller,* 554 U.S. at pp. ___–___ & fn. 26 [128 S.Ct. at pp. 2816–2817 & fn. 26].) The first of Flores's convictions for possession of a firearm by a prohibited person falls into this category. Section 12021 prohibits "[a]ny person who has been convicted of a felony" from possessing a firearm. The statute expands this prohibition as well to persons who have committed certain misdemeanor offenses. (§ 12021, subds. (a)–(c).) Flores's possession of a firearm contravened this statute by virtue of his prior conviction for violating section 245, subdivision (a)(1), which prohibits "an assault upon the person of another . . . by any means of force likely to produce great bodily injury." (§ 245, subd. (a)(1).)

Flores emphasizes that the *Heller* opinion carves out an exception to the Second Amendment's protections for *felons* in possession of a firearm, but

"says nothing about a ban based on a mere misdemeanor." We find this argument unconvincing. If, as *Heller* emphasizes, the Second Amendment permits the government to proscribe the possession of a firearm by any felon (including nonviolent offenders), we can see no principled argument that the government cannot also add certain misdemeanants, particularly those who have committed an assault by "means of force likely to produce great bodily injury." (§ 245, subd. (a)(1).) The public interest in a prohibition on firearms possession is at its apex in circumstances, as here, where a statute disarms persons who have proven unable to control violent criminal impulses. (See *United States v. Chester* (S.D.W.Va., Oct. 7, 2008, No. CR 2:08-00105) 2008 U.S.Dist. Lexis 80138 [upholding federal statute criminalizing possession of firearm by misdemeanants found guilty of domestic violence]; *United States v. Bonner* (N.D.Cal., Sept. 23, 2008, No. CR 08-00389 SBA) 2008 U.S.Dist. Lexis 80765 [recognizing that courts continue, after *Heller*, to reject claims by felons and others who have previously committed crimes of violence that they possess an absolute right to possess firearms].) Consequently, we do not read *Heller* to undermine the constitutionality of Flores's section 12031 conviction.

*Heller* also contains guidance with respect to Flores's conviction for violating section 12025, which prohibits any person from carrying "concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person." (§ 12025, subd. (a)(2).)

■ In addition to the list of "presumptively lawful regulatory measures" noted in our earlier discussion, the *Heller* opinion emphasizes, with apparent approval, that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." (*Heller, supra,* 554 U.S. at pp. ___–___ & fn. 26 [128 S.Ct. at pp. 2816–2817 & fn. 26]; see also *id.* at p. ___ [128 S.Ct. at p. 2851] (dis. opn. of Breyer, J.) [noting that "the majority implicitly, and appropriately, . . . broadly approv[es] a set of laws" restricting firearm use, including "prohibitions on concealed weapons [and] forfeiture by criminals of the Second Amendment right"].) Given this implicit approval of concealed firearm prohibitions, we cannot read *Heller* to have altered the courts' longstanding understanding that such prohibitions are constitutional. (See also *Robertson v. Baldwin* (1897) 165 U.S. 275, 281–282 [41 L.Ed. 715, 17 S.Ct. 326] [stating in dicta, "the right of the people to keep and bear arms (art. 2) is not infringed by laws prohibiting the carrying of concealed weapons . . ."].) Consequently, we conclude *Heller* does not invalidate Flores's section 12025 conviction. (See *People v. Yarbrough* (2008)

169 Cal.App.4th 303 [concluding that *Heller* does not invalidate § 12025 conviction].)

█ Finally, *Heller* does not require reversal of Flores's conviction under section 12031 for carrying a loaded firearm in a public place. (§ 12031, subd. (a)(1).) Although *Heller* does not explicitly discuss such a prohibition, we believe section 12031 is so far removed from the blanket restrictions at issue in *Heller* that its constitutional validity remains undisturbed by the Supreme Court's opinion.

Section 12031 prohibits a person from "carr[ying] a loaded firearm on his or her person . . . while in any public place or on any public street." (§ 12031, subd. (a)(1).) The statute contains numerous exceptions. There are exceptions for security guards (*id.*, subd. (d)), police officers and retired police officers (*id.*, subd. (b)(1), (2)), private investigators (*id.*, subd. (d)(3)), members of the military (*id.*, subd. (b)(4)), hunters (*id.*, subd. (i)), target shooters (*id.*, subd. (b)(5)), persons engaged in "lawful business" who possess a loaded firearm on business premises and persons who possess a loaded firearm on their own private property (*id.*, subd. (h)). A person otherwise authorized to carry a firearm is also permitted to carry a loaded firearm in a public place if the person "reasonably believes that the person or property of himself or herself or of another is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property." (*Id.*, subd. (j)(1).) Another exception is made for a person who "reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety." (*Id.*, subd. (j)(2).) Finally, the statute makes clear that "[n]othing in this section shall prevent any person from having a loaded weapon, if it is otherwise lawful, at his or her place of residence, including any temporary residence or campsite." (*Id.*, subd. (*l*).)

█ This wealth of exceptions creates a stark contrast between section 12031 and the District of Columbia statutes at issue in *Heller*. In particular, given the exceptions for self-defense (both inside and outside the home), there can be no claim that section 12031 in any way precludes the use "of handguns held and used for self-defense in the home." (*Heller, supra*, 554 U.S. at p. ___ [128 S.Ct. at p. 2822].) Instead, section 12031 is narrowly tailored to reduce the incidence of unlawful *public* shootings, while at the same time respecting the need for persons to have access to firearms for lawful purposes, including self-defense. (See *People v. Foley* (1983) 149 Cal.App.3d Supp. 33, 39 [197 Cal.Rptr. 533] ["The primary purpose of the Weapons

Control Law is to control the threat to public safety in the indiscriminate possession and carrying about of concealed and loaded weapons."].) Consequently, section 12031 does not burden the core Second Amendment right announced in *Heller*—" 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home' "—to any significant degree.[5] (*Heller, supra*, at p. ___ [128 S.Ct. at p. 2831] (dis. opn. of Stevens, J.).) We, therefore, conclude that *Heller* does not require reversal of Flores's section 12031 conviction.

In sum, the United States Supreme Court's *Heller* decision does not warrant invalidation of Flores's firearms convictions.

---

[5] The majority opinion in *Heller* provides little guidance with respect to how courts are to determine whether the numerous firearm restrictions not explicitly addressed in the opinion should be evaluated in light of the Second Amendment right recognized in that case. (*Heller, supra*, 554 U.S. at p. ___ [128 S.Ct. at p. 2821] [explaining that the court cannot be expected in its "first in-depth examination of the Second Amendment" to "clarify the entire field"].) The parties in the instant case provide little assistance. Flores politely asks this court to "address the question" of *Heller*'s applicability without proposing any analytical framework for doing so. The Attorney General demurs as well, while incorrectly asserting that Flores's convictions were each based on his being "a prohibited person" and thus all fall within *Heller*'s explicit felon-in-possession exception.

One of the dissenting opinions in *Heller* criticizes the majority for sidestepping this difficult issue and notes that "adoption of a true strict-scrutiny standard for evaluating gun regulations would be impossible" due to the ever-present compelling interest in public safety in this context and the limited ability of courts to determine the efficacy of a particular firearm restriction to address that interest. (*Heller, supra*, 554 U.S. at p. ___ [128 S.Ct. at p. 2851] (dis. opn. of Breyer, J.); see also Winkler, *Scrutinizing the Second Amendment* (2007) 105 Mich. L.Rev. 683 [explaining the difficulties of applying strict scrutiny to gun control regulations and cataloguing the ways in which courts have and are likely to continue to scrutinize gun laws after adoption of an individual rights approach to the Second Amendment].) Further, as the dissent notes, it is "far from clear" that the firearm prohibitions approved in *Heller* itself (e.g., felon in possession of a firearm) would survive strict scrutiny analysis. (*Heller*, at p. ___ [128 S.Ct. at p. 2851] (dis. opn. of Breyer, J.).)

The *Heller* majority itself acknowledged that rational basis scrutiny is inapposite, as the laws struck down in *Heller* itself would have met that lenient standard. (*Heller, supra*, 554 U.S. at p. ___, fn. 27 [128 S.Ct. at p. 2818, fn. 27].) Consequently, it appears that a midlevel standard of scrutiny analogous to the "undue burden" standard (see *Planned Parenthood of Southeastern PA. v. Casey* (1992) 505 U.S. 833, 874 [120 L.Ed.2d 674, 112 S.Ct. 2791] (plur. opn.)) will ultimately prevail in this context. (See Reynolds & Denning, *Heller's Future In The Lower Courts* (2008) 102 N.W.U. L.Rev. Colloquy 406, 414, fn. 29 [suggesting that Justice Breyer's dissent in *Heller, supra*, 554 U.S. at pp. ___, ___ [128 S.Ct. at pp. 2847, 2863] (dis. opn. of Breyer, J.), addressing this question implies "some sort of 'undue burden' " or " 'undue-burden-lite' standard" for firearm regulation].) We do not attempt to set forth a definitive statement of the applicable standard here, but conclude only that section 12031 does not violate the Second Amendment under any conceivable articulation of such a standard.

## IV.

### *The Order Imposing Costs as a Condition of Probation Is Erroneous*

■ Flores contends that the trial court erred in requiring him to pay $99 a month for probation supervision, $1,127 in presentence investigation costs, and $570 in attorney fees "to the extent [its] order makes [such payments] a condition of probation." The Attorney General agrees, suggesting that "[t]he conditions of appellant's probation should be modified to delete any requirement that appellant pay the costs of probation or attorney's fees." (See *People v. Bradus* (2007) 149 Cal.App.4th 636, 641 [57 Cal.Rptr.3d 79] ["Although the trial court is statutorily authorized to make respective orders for the payment of appointed attorney fees and for the costs of probation, depending on a defendant's ability to pay, such costs and fees cannot legally be imposed as conditions of probation."]; *People v. Hart* (1998) 65 Cal.App.4th 902, 907 [76 Cal.Rptr.2d 837] (*Hart*).) The parties also agree on the remedy—that "this court should modify the order granting probation to clarify that payment of those costs and fees is not a condition of probation but rather an order of the court entered at judgment." (See *Hart*, at p. 907 ["the trial court may order defendant to pay for costs of probation and attorney fees, but may not condition defendant's grant of probation upon payment thereof"].) As we agree that the trial court's orders could be construed to require the payment of probation costs and attorney fees *as a condition* of probation, and that such a condition would be improper, we grant Flores's request.

Flores also asks this court to strike the portion of the trial court's written standard form "Order Granting Probation," which states: "If it is determined that you have the present ability to repay the county [for various costs], the county will request that a judgment be issued . . . ." We decline this request. While, as explained in *Hart*, there is no need or authorization for a separate money judgment to enforce the trial court's orders, there has been no separate money judgment entered in this case. (*Hart, supra,* 65 Cal.App.4th at p. 906.) Consequently, Flores's request that we strike language from the trial court's order is based on mere speculation that an improper judgment will follow. We see no basis to make such an assumption. The county is permitted under the Penal Code to enforce the trial court's order and we presume it will do so properly. (See *ibid.*) If, in fact, the county does attempt to obtain or enforce an improper money judgment against Flores, he may raise his objection at that time.

## DISPOSITION

The trial court's probation order is modified to eliminate any requirement that Flores pay the costs of probation or attorney fees *as a condition of probation;* however, the trial court's order that defendant pay such costs and fees is affirmed. In all other respects the judgment is affirmed.

Benke, Acting P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 2009, S170073.