Filed 5/30/13  P. v. Burke CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN JOHN BURKE,<br><br>    Defendant and Appellant. | G047061<br>(Consol. with G047062)<br><br>(Super. Ct. Nos. 11NF3234 &<br> 11NF2951)<br><br>O P I N I O N |

Appeal from judgments of the Superior Court of Orange County, Craig E. Robison, Judge.  Affirmed.

Khouri Law Firm and Michael J. Khouri for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Steven John Burke pleaded guilty to one count of unlawful possession of a firearm (Pen. Code, § 12021, subd. (c)(1)) (case No. 11NF2951) and two counts of unlawful possession of ammunition (Pen. Code, § 12316, subd. (b)(1)) (case No. 11NF3234).[1] On appeal he challenges the constitutionality of section 12021, subdivision (c)(1) (section 12021(c)(1)), which prohibits certain misdemeanants from possessing firearms, contending the statute violates his Second Amendment right to bear arms and Fourteenth Amendment right to equal protection.[2] We consolidated the cases on appeal and affirm the judgments.

FACTS

Defendant offered the following facts as the basis for his guilty pleas underlying the judgments in these consolidated appeals. On February 10, 2011, he unlawfully possessed a firearm. On February 10 and October 5 of 2011, he unlawfully possessed ammunition. On those dates, he was prohibited from possessing firearms or

---

[1] On the People's motion, a third count of unlawful possession of ammunition was dismissed. Defendant obtained certificates of probable cause to appeal from the judgments based on his guilty pleas.

All statutory references are to the Penal Code. Effective January 1, 2012, the Legislature repealed sections 12021 and 12316. (Stats. 2010, ch. 711, § 4.) Section 29805 continues former section 12021, subd. (c)(1) without substantive change. Section 30305, subdivision (a) continues former section 12316, subdivision (b)(1) without substantive change. For convenience of reference to the record, we will refer to the former Penal Code sections under which these cases were filed.

[2] Without any supporting argument or citation to legal authority regarding section 12316, subdivision (b)(1), which prohibits possession of ammunition by persons subject to a section 12021 firearm prohibition, defendant appears to challenge its constitutionality under the Second Amendment. This court does not address unsupported contentions. (*People v. Jones* (1998) 17 Cal.4th 279, 304.)

ammunition due to his August 28, 2003 conviction for misdemeanor assault under section 240.

## DISCUSSION

Defendant challenges the constitutionality of section 12021(c)(1) under the Second and Fourteenth Amendments of the United States Constitution. Section 12021(c)(1) prohibits a person convicted of a qualifying misdemeanor (including assault under § 240) from owning or possessing a firearm within 10 years of the misdemeanor conviction. Assault under section 240 is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

We first address defendant's Second Amendment challenge to the statute. Relying on *District of Columbia v. Heller* (2010) 554 U.S. 570 (*Heller*) and *U.S. v. Chester* (4th Cir. 2010) 628 F.3d 673 (*Chester*), defendant urges us to apply *Chester's* standard of intermediate scrutiny to determine whether section 12021(c)(1) violates his Second Amendment right to bear arms.

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *Heller*, the Supreme Court held that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." (*Heller*, *supra*, 554 U.S. at p. 592.) *Heller* cautioned, however, that "the right secured by the Second Amendment is not unlimited." (*Id.* at p. 626.) Indeed, *Heller* identified (and left intact) certain historically permissible restrictions on the right to bear arms: "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and

government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (*Id.* at pp. 626-627.) *Heller* further recognized existing prohibitions on carrying concealed weapons (*id*. at p. 626) or "'dangerous and unusual weapons'" (*id*. at p. 627). *Heller* clarified that its list did "not purport to be exhaustive" and that it identified "these presumptively lawful regulatory measures only as examples." (*Id.* at p. 627, fn. 26.)

Heller then turned to the District of Columbia law at issue there, which "totally ban[ned] handgun possession in the home[ and] also require[d] that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable." (*Heller*, *supra*, 554 U.S. at p. 628.) The Supreme Court held the law was unconstitutional. (*Id.* at pp. 628-629.) The high court explained that the Second Amendment protects a person's right to possess a handgun in the home for self-defense and protection of family and property. (*Heller*, at p. 628.) The Supreme Court declared that the District of Columbia's ban of handguns from the home failed constitutional muster under any standard, thus expressly leaving open the question of the applicable standard of scrutiny. (*Id.* at pp. 628-629, 634.) *Heller* did suggest, however, that rational basis scrutiny would be insufficient: "If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." (*Id.* at p. 628, fn. 27.)

In *Heller's* aftermath, the Court of Appeal in *People v. Flores* (2008) 169 Cal.App.4th 568 (*Flores*) upheld section 12021(c)(1) against a Second Amendment challenge under facts similar to those before us. (*Flores*, at pp. 573, 577.) The defendant's section 12021(c)(1) conviction was based on his prior misdemeanor assault conviction under "section 245, subdivision (a)(1), which prohibits 'an assault upon the person of another . . . by any means of force likely to produce great bodily injury.'" (*Flores*, at p. 574). *Flores* observed that section 12021, subdivision (a)'s prohibition of

4

*felons* from possessing firearms falls into one of *Heller's* recognized permissible restrictions. (*Flores*, at p. 574.) As to misdemeanants, *Flores* reasoned: "If, as *Heller* emphasizes, the Second Amendment permits the government to proscribe the possession of a firearm by any felon (including nonviolent offenders), we can see no principled argument that the government cannot also add certain misdemeanants, particularly those who have committed an assault by 'means of force likely to produce great bodily injury.' [Citation.] The public interest in a prohibition on firearms possession is at its apex in circumstances, as here, where a statute disarms persons who have proven unable to control violent criminal impulses." (*Id.* at p. 575.)

Subsequently, *People v. Delacy* (2011) 192 Cal.App.4th 1481 (*Delacy*) involved another Second Amendment challenge to section 12021(c)(1)'s prohibition on misdemeanants' possession of firearms. (*Delacy*, at p. 1485.) The predicate misdemeanor in *Delacy* was battery under section 242 (*Delacy*, at p. 1485), which defines battery as "'any willful and unlawful use of force or violence upon the person of another'" (*Delacy*, at p. 1492). The defendant urged the appellate court to apply strict scrutiny to strike down section 12021(c)(1). (*Delacy*, at p. 1488.)[3] The appellate court found it unnecessary to apply any standard of scrutiny balancing the statute's objectives against its means because, under *Heller* and *Flores*, section 12021(c)(1) is a presumptively lawful regulation (insofar as it prohibits "firearm possession by misdemeanants who have shown a propensity to commit violence against others") and is therefore immune from means-end scrutiny. (*Delacy*, at p. 1492; see also *U.S. v. Marzzarella* (3d Cir. 2010) 614 F.3d 85, 91 [*Heller's* recognized historic restrictions are presumptively lawful *not* because "they pass muster under any standard of scrutiny," but, rather, because they "regulate conduct outside the scope of the Second Amendment" and "are exceptions to the right to bear arms"].) *Delacy* noted that appellate courts were

_____

[3] "When strict scrutiny applies, a law is constitutional only if it is 'necessary to achieve a compelling state interest.'" (*Id.* at p. 1488, fn. 4.)

5

"generally unanimous in rejecting the application of means-end scrutiny to statutes disqualifying felons and certain misdemeanants from weapons possession until an en banc decision of the Seventh Circuit Court of Appeals, *U.S. v. Skoien* (7th Cir. 2010) 614 F.3d 638 (*Skoien*) and, more recently, . . . *Chester*[, *supra*,] 628 F.3d 673 . . . , which follows *Skoien*." (*Id.* at p. 1490.) *Delacy* disagreed with *Skoien's* application of intermediate scrutiny to determine the constitutionality of *Heller's* presumptively valid restrictions. In *Delacy's* view, "the *Skoien* approach gives too little weight to the 'presumptively lawful' language of *Heller*." (*Delacy*, at p. 1490.)

Here, defendant urges us to apply the intermediate scrutiny standard advocated by *Chester*, where the Fourth Circuit adopted "a two-part approach to Second Amendment claims." (*Chester*, *supra*, 628 F.3d at p. 680.) The *Chester* approach asks whether the challenged law restricts conduct historically protected by the Second Amendment and, if so, whether (under the intermediate scrutiny standard) there is a reasonable fit between the law and a substantial government objective. (*Chester*, at pp. 680, 683.) *Chester* concluded that (1) "the possession of a firearm in the home by a domestic violence misdemeanant" (*id.* at p. 680) was not necessarily excluded from Second Amendment protection, (2) therefore the defendant was "entitled to some measure of Second Amendment protection to keep and possess firearms in his home for self-defense" (*id.* at pp. 681-682), and (3) the government bore the burden of justifying the challenged law under the appropriate standard of scrutiny (*id.* at p. 682). *Chester* reached this conclusion, however, only because the government there did *not* contend that the challenged law involved conduct unprotected by the Second Amendment and because of the lack of historical evidence on this issue in the record. (*Chester*, at p. 682.)

We agree with *Flores* and *Delacy* that gun possession by an assault or battery misdemeanant is not conduct historically protected by the Second Amendment. Accordingly, we hold that section 12021(c)(1)'s prohibition on gun possession by a person convicted of misdemeanor assault under section 240 (which requires "an unlawful

6

attempt, coupled with a present ability, to commit a violent injury") is a presumptively lawful restriction and immune from constitutional means-ends scrutiny. Furthermore, this case is distinguishable from *Chester* because the Attorney General argues here that defendant "committed a misdemeanor crime of violence" and under *Flores* and *Delacy* does not qualify for Second Amendment protection.

Defendant also challenges the constitutionality of section 12021(c)(1) on equal protection grounds under the Fourteenth Amendment of the United States Constitution. Focusing on voting rights, he argues that, although the Supreme Court has "upheld states' right to disenfranchise ex-felons," as to misdemeanants it has "held that the Fourteenth Amendment prohibited states from disenfranchising persons convicted of misdemeanors, even if the crimes involved moral turpitude." For this proposition he relies on *Hunter v. Underwood* (1985) 471 U.S. 222, 223. Contrary to defendant's representation, *Hunter* held that an Alabama law violated equal protection because its "original enactment was motivated by a desire to discriminate against blacks on account of race" and the law's racially discriminatory effect was ongoing. (*Id.* at p. 233.) Furthermore, as stated by the Attorney General here, "[a]llowing a person who has a demonstrated inability to control his violent criminal impulses to possess a firearm raises concerns for public safety that are not present in allowing the same person to vote."

DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

THOMPSON, J.