Filed 3/14/14  P. v. Meyer CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>RONNIE THEODORE MEYER, JR.,<br><br>      Defendant and Appellant. | A137224<br><br>(Del Norte County<br> Super. Ct. No. CR-F-12-0009494) |

A jury convicted Ronnie Theodore Meyer, Jr., of illegally possessing a firearm after having been convicted within 10 years of misdemeanor assault, under Penal Code[1] section 29805.  He contends his conviction violates his Second Amendment right to bear arms.  We disagree, and affirm the judgment.

## I.  BACKGROUND

Defendant was charged by information with illegally possessing a firearm after having been convicted within 10 years of assault (§ 29805; count 1), grand theft firearm (§ 487, subd. (d); count 2), and misdemeanor impersonating a peace officer (§ 538d, subd. (a); count 3).  Before trial, the prosecution dismissed counts 2 and 3.

Jury trial began on November 5, 2012.  On November 6, 2012, the jury found defendant guilty.  On November 29, 2012, the trial court sentenced defendant to a two-year prison term.  Defendant timely appealed.

---

[1] All statutory references are to the Penal Code.

**A.** *Facts*

In or about January 2011, Jonathan Fargo loaned a gun to his cousin Charles David Ray Smith. Smith loaned the gun to defendant in early August 2012, but never got it back.

About 12:50 a.m. on August 29, 2012, Del Norte County Sheriff's Deputy Thomas Rosina saw defendant look at his patrol car, and then walk briskly away, going behind a fence into an apartment parking lot. Rosina drove into the lot. When defendant saw him, he again walked quickly away. Rosina saw something shiny that appeared to be a badge on defendant's sweatshirt. Rosina told defendant to stop, pulled alongside of him, and asked what he was doing with a peace officer badge. Rosina knew defendant was not a police officer. Defendant said he bought the badge at a garage sale and was just "messing around." Rosina seized the badge and searched defendant for weapons, but found none.

Afterwards, Rosina searched the area where he had seen defendant and found a digital scale, a box of .380 ACP ammunition, a loaded Hi-Point 380 ACP handgun, and two cell phones. Rosina turned on one of the cell phones and found a photo of defendant and text messages addressed to him. Rosina later showed the gun to Fargo, who identified it as the gun he had loaned to Smith.

The prosecution introduced documentary evidence to show that on August 31, 2010, defendant was convicted of misdemeanor assault in violation of section 240.

## II. DISCUSSION

Defendant contends the statute under which he was convicted is facially unconstitutional under the Second Amendment. We disagree.

We were faced with the identical question in *People v. Delacy* (2011) 192 Cal.App.4th 1481 (*Delacy*), which involved the predecessor statute to section 29805, former section 1021, subdivision (c)(1). (*Delacy*, at p. 1485.) Relying on *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*) and *People v. Flores* (2008) 169 Cal.App.4th 568 (*Flores*), we held "if the Second Amendment permits the government to prohibit all felons (including nonviolent offenders) from possessing

firearms, there is no reason the government cannot also prohibit firearm possession by misdemeanants who have shown a propensity to commit violence against others." (*Delacy*, at p. 1492, fn. omitted.)

*Heller* identified an expressly nonexclusive list of "presumptively lawful regulatory measures," stating "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (*Heller, supra*, 554 U.S. at pp. 626–627 & fn. 26; accord, *McDonald v. City of Chicago* (2010) ___ U.S.___ [130 S.Ct. 3020, 3047] (plur. opn. of Alito, J.) [reiterating these categories of permissible firearm regulations].)  As we held in *Delacy*, this language encompasses traditional weapons regulations including those applying to persons convicted of misdemeanor offenses involving violence.  (*Delacy, supra*, 192 Cal.App.4th at pp. 1490–1491.)  The Second Amendment protects " 'the right of *law-abiding* citizens to possess non-dangerous weapons for self-defense in the home.' " (*Delacy*, at p. 1491, quoting *U.S. v. Marzzarella* (3d Cir. 2010) 614 F.3d 85, 92 (*Marzzarella*).)

Defendant maintains the *Heller* language was mere dictum that is unreliable and inconsistent with other statements made by the majority in *Heller* suggesting, according to defendant, that Second Amendment rights "come with attendant costs to public safety."  As have other courts, we construe the *Heller* language not as dicta, but as a limitation on *Heller*'s holding that individuals have a right to possess weapons under the Second Amendment of the federal Constitution.  (See, e.g., *U.S. v. Vongxay* (9th Cir. 2010) 594 F.3d 1111, 1115; *U.S. v. Rozier* (11th Cir. 2010) 598 F.3d 768, 771, fn. 6; *U.S. v. Barton* (3d Cir. 2011) 633 F.3d 168, 171; *U.S. v. Huet* (3d Cir. 2012) 665 F.3d 588, 600, fn. 11.)  In any event, whether dictum or not, *Heller*'s declaration of presumptively lawful prohibitions comes in a United States Supreme Court decision and must therefore be taken seriously in every Second Amendment case to which it might be relevant.  (See *Marzzarella, supra*, 614 F.3d at p. 91, fn. 5; see also *U.S. v. Serawop* (10th Cir. 2007)

3

505 F.3d 1112, 1122 ["[W]e are ' "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." ' "].)  *Heller*'s phrase "nothing in our opinion should be taken to cast doubt" is strongly worded and leaves no room for defendant's argument that the exceptions *Heller* recognizes for certain traditional firearms regulations are inconsistent with the rest of the opinion.

We also reject defendant's argument that assault is an insufficiently serious offense to warrant deprivation of the right to possess a firearm.  "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (§ 240.)  It involves the attempted use of physical force against another.  (*People v. Golde* (2008) 163 Cal.App.4th 101, 108–109.)  As stated in *Flores*, "[t]he public interest in a prohibition on firearms possession is at its apex in circumstances . . . where a statute disarms persons who have proven unable to control violent criminal impulses."  (*Flores, supra*, 169 Cal.App.4th at p. 575.)

Defendant does not persuade us *Flores* and *Delacy* were wrongly decided or are distinguishable from this case.

### III.  DISPOSITION

The judgment is affirmed.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Becton, J.[*]

_____

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.