Filed 12/16/24  P. v. Marley CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CINNAMON TIERRA MARLEY,<br><br>    Defendant and Appellant. | C099262<br><br>(Super. Ct. No. 23FE001115) |

Because she pleaded no contest to a misdemeanor crime of domestic violence, defendant Cinnamon Tierra Marley is prohibited by Penal Code section 29805, subdivision (b),[1] from owning or possessing any firearms or ammunition for the rest of her life.  In this appeal, defendant challenges the constitutionality of this statute, arguing that it facially violates the Second Amendment to the United States Constitution under

---

[1]     Undesignated section references are to the Penal Code.

1

the framework outlined in *N.Y. State Rifle & Pistol Ass'n v. Bruen* (2022) 597 U.S. 1 (*Bruen*). We disagree and therefore affirm.

## PROCEDURAL BACKGROUND

Given the nature of this appeal, our recitation of the facts is limited to the procedural history of this matter.

In April 2023, the District Attorney of Sacramento County filed an information charging defendant with one count of inflicting corporal injury upon a person with whom she had a dating relationship (§ 273.5, subd. (a)).[2] In July 2023, defendant pleaded no contest to the offense as a misdemeanor.

After taking defendant's plea, the trial court sentenced defendant to probation with an agreement that it would convert to informal probation after the successful completion of one year of a batterer's treatment program. The court imposed a three-year criminal protective order. The court also advised defendant that, because of her plea, she would not be able to own or possess any firearms or ammunition for the rest of her life. The court stated: "I should have told you that before you entered the plea, but is that acceptable to you?" Defendant responded, "Yeah, I guess so. It's for life, huh."

Defendant filed a timely notice of appeal.

## DISCUSSION

Because of her conviction for misdemeanor domestic violence, defendant is prohibited by statute[3] from owning or possessing firearms and ammunition for the rest of

---

[2] Although charged as a felony, the offense is a "wobbler," punishable either as a felony or as a misdemeanor. (*People v. Villalba* (2023) 89 Cal.App.5th 659, 667.)

[3] Section 29805, subdivision (b) provides: "Any person who is convicted, on or after January 1, 2019, of a misdemeanor violation of Section 273.5, and who subsequently owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine."

her life.  Defendant contends, however, that this statutory restriction is unconstitutional because it facially violates the Second Amendment.[4]

The standard for a facial constitutional challenge to a statute is exacting.  To prevail on a facial attack, it is not sufficient to show that there could be instances in which the application of the law might improperly impinge upon constitutional rights. (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1373.)  Instead, the party challenging the constitutionality of a statute has the heavy burden of demonstrating it is unconstitutional in all or most cases.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 54; *Mass v. Franchise Tax Bd.* (2019) 38 Cal.App.5th 959, 963.) And while we review the constitutionality of a statute de novo (*People v. Solis* (2020) 46 Cal.App.5th 762, 771), because statutes come before us clothed with a presumption of validity, we must uphold the statute " 'unless its unconstitutionality clearly, positively, and unmistakably appears . . . .' "  (*City of Los Angeles v. Superior Court of Los Angeles County* (2002) 29 Cal.4th 1, 10; *AIDS Healthcare Foundation v. Bonta* (2024) 101 Cal.App.5th 73, 81.)  For the reasons that follow, we conclude defendant has failed to show that the challenged statute is facially unconstitutional.

Defendant contends the statute is unconstitutional because it violates the Second Amendment, which provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (U.S. Const. 2nd Amend.)

---

[4]     The People argue defendant's challenge to the firearm restriction is unripe because defendant is subject to a three-year protective order that prohibits her from owning or possessing firearms while the protective order is in effect.  We disagree.  There is an actual controversy, touching the legal relations of the parties, that is sufficiently definite and concrete to permit judicial resolution.  (*Action Apt. Ass'n v. Santa Monica Rent Control Bd.* (2001) 94 Cal.App.4th 587, 609; *Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 301.)

In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the United States Supreme Court construed the Second Amendment to encompass the right of an ordinary, law-abiding citizen to possess a firearm, unconnected with service in a militia, and to use that firearm for traditionally lawful purposes, such as self-defense within the home. (*Id.* at pp. 595, 635; see also *McDonald v. City of Chicago, Ill.* (2010) 561 U.S. 742, 750, 791 [holding that this right applies to the states through the Fourteenth Amendment].) But the Supreme Court was careful to note that the right secured by the Second Amendment "is not unlimited" and does not include "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Heller, supra*, at p. 626.) Although the Supreme Court did not "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," the Supreme Court stated that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill [and] laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," which it identified as examples of "presumptively lawful regulatory measures." (*Id.* at pp. 626-627, fn. 26.)

In the wake of *Heller*, California appellate courts rejected constitutional challenges to section 29805, subdivision (b)'s predecessor statute (former § 12021, subd. (c)), which made it a crime for a person with a qualifying misdemeanor conviction to possess a firearm. (*People v. Flores* (2008) 169 Cal.App.4th 568, 574-575 [predecessor statute prohibiting possession of firearms by misdemeanants does not violate Second Amendment under *Heller*]; *People v. Delacy* (2011) 192 Cal.App.4th 1481, 1488-1492 [same].) In *Flores*, the court reasoned that "[i]f, as *Heller* emphasizes, the Second Amendment permits the government to proscribe the possession of a firearm by any felon (including nonviolent offenders), we can see no principled argument that the government cannot also add certain misdemeanants . . . . The public interest in a prohibition on firearms possession is at its apex in circumstances, as here, where a statute disarms

4

persons who have proven unable to control violent criminal impulses." (*Flores, supra*, at p. 575; accord, *Delacy, supra*, at p. 1492.)

In *Bruen*, *supra*, 597 U.S. 1, the Supreme Court clarified the proper framework for assessing Second Amendment challenges. The Supreme Court explained that, after *Heller*, federal courts "coalesced around a . . . framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." (*Id*. at p. 17.) The Supreme Court found the application of means-end scrutiny to be inconsistent with *Heller*. (*Id*. at p. 24.) Instead, the Supreme Court established the following two-step framework for determining whether a regulatory measure complies with the Second Amendment. First, a court must ask whether the Second Amendment's plain text covers an individual's conduct. (*Id*. at p. 24.) If so, the Second Amendment presumptively protects that conduct. (*Ibid*.) The government must then "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." (*Ibid*.) Only where a regulation is consistent with the Second Amendment's text and historical understanding will it pass constitutional muster. (*Id*. at p. 26.)

Relying on *Bruen*, defendant argues that the challenged statute impinges on the core Second Amendment right to possess a firearm for self-defense, and therefore the government must justify the firearm restriction by demonstrating it is consistent with the nation's historical tradition of firearm regulation. Because "[d]omestic [v]iolence laws are a modern concept[,]" defendant contends there is no historical basis for imposing a lifetime firearm ban based on a misdemeanor domestic violence conviction.

However, in *United States v. Rahimi* (2024) 602 U.S.680 [219 L.Ed.2d 351] (*Rahimi*), the Supreme Court clarified that *Bruen*'s second step does not require a historical match with a founding-era regulation. (*Id*. at pp. 691-692 [219 L.Ed.2d at pp. 363-364].) Instead, "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." (*Id*. at p. 692 [219 L.Ed.2d at p. 363].) "Why and how the regulation burdens

the right are central to this inquiry. [Citation.] For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." (*Ibid*.) Thus, even when a challenged regulation does not precisely match its historical precursors, it still may pass constitutional muster if it is " 'relevantly similar' " to the laws that our regulatory tradition is understood to permit. (*Ibid*.; *Bruen, supra*, 597 U.S. at p. 30 [government needs to identify only a well-established historical analogue, not a historical twin].)

In *Rahimi*, the Supreme Court rejected a facial challenge to title 18 United States Code section 922 (g)(8), which prohibits possession of firearms by persons subject to a qualifying domestic violence restraining order. (*Rahimi, supra,* 602 U.S. at p. 685 [219 L.Ed.2d at p. 360].) In upholding the law, the Supreme Court held that the restriction fits within our nation's regulatory tradition of disarming individuals who pose a credible threat to the physical safety of others. (*Id*. at pp. 689, 692, 699-702 [219 L.Ed.2d at pp. 362, 364, 367-370].)

Since *Rahimi* was decided, multiple federal courts have rejected facial constitutional challenges to the provisions of title 18 United States Code section 922 (g)(9), which—like the statute challenged here—prohibits possession of firearms by persons convicted of misdemeanor crimes of domestic violence. (See, e.g., *United States v. Gailes* (6th Cir. 2024) 118 F.4th 822, 824-828, 830; *United States v. Donahue* (S.D.Tex. 2023) 680 F. Supp. 3d 812, 814-815; *United States v. Nutter* (S.D.W.Va. 2022) 624 F. Supp. 3d 636, 643-644; *United States v. Jackson* (W.D.Okla. 2022) 622 F. Supp. 3d 1063, 1067; *White v. United States* (C.D.Cal., Sep. 24, 2024, No. 5:23-cv-02215-DSF-SP) 2024 U.S.Dist. LEXIS 172622, at *3-10; *United States v. Wheeler* (S.D.Ohio, Apr. 11, 2024, No. 2:23-cr-0066) 2024 U.S. Dist. LEXIS 66500, at *10-17; *United States v. Brooks* (N.D.Iowa, Nov. 15, 2023, No. CR23-53-LTS-MAR) 2023 U.S.Dist. LEXIS 204454, at *15-18; *United States v. Proctor* (S.D.W.Va., July 20, 2023, No. 2:23-cr-00074) 2023

6

U.S.Dist. LEXIS 126946, at *4.)  These courts have reasoned that persons "previously convicted of a domestic-violence misdemeanor fall squarely within the category of people who pose a clear threat to the physical safety of others[,]" and therefore the firearm prohibition fits well within our nation's historical tradition of firearm regulation. (See, e.g., *Gailes, supra*, at pp. 828-830; *White, supra,* 2024 U.S.Dist. LEXIS 172622, at *7-10; *Brooks, supra*, 2023 U.S.Dist. LEXIS 204454, at *15; *Wheeler, supra*, 2024 U.S.Dist. LEXIS 66500, at *10-17.)  We reach the same conclusion here.[5]  Thus, we affirm.

DISPOSITION

The judgment is affirmed.

\s\                    ,<br>Krause, J.

We concur:

\s\                    ,
Hull, Acting P. J.

\s\                    ,
Mesiwala, J.

---

[5]    Given this conclusion, it is unnecessary for us to resolve whether domestic violence misdemeanants are within the class of "people" protected by the Second Amendment's individual right to bear arms.  (See *United States v. Gailes, supra,* 118 F.4th 822, 825-827.)