Filed 8/24/23

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097229 |
| Plaintiff and Appellant, | (Super. Ct. No. 22FE002669) |
| v. | |
| STEPHANIE MILLER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, James E. McFetridge, Judge. Reversed.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Tia M. Coronado, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

In a complaint filed in February 2022, the Sacramento County District Attorney charged defendant Stephanie Miller under Penal Code section 25400, subdivision (a)(1),

1

with carrying a concealed firearm in a vehicle under her control.[1]  Section 25400 does not apply to individuals, unlike Miller, who are licensed to carry concealed firearms under California law.  (§ 25655.)  In August 2022, Miller filed a demurrer asserting her concealed firearm charge was unconstitutional under *New York State Rifle & Pistol Association, Inc. v. Bruen* (2022) __ U.S. __ [142 S.Ct. 2111, 2122, 2156] (*Bruen*), which held the "proper cause" requirement in New York's public carry licensing regime violated the Second and Fourteenth Amendments.  The trial court sustained Miller's demurrer and dismissed the charge against her.

On appeal, the People argue Miller lacked standing to raise her constitutional challenge because she never attempted to apply for a license and could not show she would satisfy any valid conditions California places on receiving one.  The People argue *Bruen* only invalidated the "good cause" requirement in California's firearm licensing statutes and they remain otherwise constitutional pursuant to the severability doctrine.  The People further assert the trial court's interpretation of *Bruen* is overly broad and the criminal charge of having a concealed firearm under section 25400 remains valid post-*Bruen*.  We conclude that, to the extent Miller had standing, her assertions are ultimately unavailing because section 25400 does not violate the Second Amendment regardless of the constitutionality of California's firearm licensing statutes.  We therefore reverse the superior court's order sustaining Miller's demurrer and dismissing the charge against her.

## I.  BACKGROUND

"California has a multifaceted statutory scheme regulating firearms.  State law generally prohibits carrying concealed firearms in public, whether loaded or unloaded. [(]§ 25400[)].  State law also generally prohibits carrying loaded firearms on the person or in a vehicle in any public place or on any public street, in either an incorporated city or

---

[1] Undesignated statutory references are to the Penal Code.

2

a 'prohibited area' of 'unincorporated territory.' [(]§ 25850.[)] Finally, state law generally prohibits carrying unloaded handguns openly on the person in a public place or on a public street, in either an incorporated city or a 'prohibited area' of an 'unincorporated area of a county.' [(]§ 26350.[)] [¶] However, there are numerous exceptions to these general prohibitions." (*Peruta v. County of San Diego* (9th Cir. 2016) 824 F.3d 919, 925.) This case focuses on one of these overlapping general prohibitions and one exception thereto.

Section 25400 generally prohibits carrying a concealed firearm. Miller was charged solely with violating section 25400, subdivision (a)(1), which applies where a person "[c]arries concealed within any vehicle that is under the person's control or direction any pistol, revolver, or other firearm capable of being concealed upon the person." It was further alleged that Miller was not registered as the owner of the firearm, and the firearm was loaded and in her immediate possession and readily accessible to her. (§ 25400, subd. (c)(6).)

Miller's arguments in the trial court implicate an exception to criminal liability for persons licensed to carry a concealed firearm under California law: "Section 25400 does not apply to, or affect, the carrying of a pistol, revolver, or other firearm capable of being concealed upon the person by a person who is authorized to carry that weapon in a concealed manner pursuant to Chapter 4 (commencing with Section 26150)." (§ 25655.) The relevant portions of Chapter 4 provide: "When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person," the sheriff or head of the police department "*may issue* a license to that person upon proof of all of the following: [¶] (1) *The applicant is of good moral character*. [¶] (2) *Good cause exists for issuance of the license*. [¶] (3) The applicant [meets relevant residency requirements]. [¶] (4) The applicant has completed a course of training as described in Section 26165." (§§ 26150, subd. (a), 26155, subd. (a), italics added.) Neither "good moral character" nor "good cause" are further defined by statute. Additionally, "[a]

3

license . . . shall not be issued if the Department of Justice determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm." (§ 26195, subd. (a).)

Miller's demurrer argued that, under *Bruen*, the charges against her were unconstitutional. She contended California's firearm licensing scheme is nearly identical to the New York scheme invalidated in *Bruen*, and California's "good moral character" and "good cause" requirements are unconstitutional. She argued that "[b]ecause the law that would otherwise make firearm possession in public legal is unconstitutional, a criminal defendant cannot be prosecuted for violating it." Miller asserted that whether she had previously applied for a concealed weapons license was irrelevant to whether she had standing to contest California's licensing scheme.[2]

The district attorney opposed the demurrer on the grounds that Miller lacked standing to litigate the constitutionality of California's concealed carry firearm licensing regime. The district attorney further argued *Bruen* struck down only the "good cause" requirement, and the remainder of the licensing scheme was constitutional because the

---

[2] In a footnote, Miller stated, "This court may also view the issue as a facial challenge to the statute" and asserted California's licensing scheme "fails the same facial challenge," indicating she believed she was asserting an as applied challenge. An as applied challenge "contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) Here, the distinction between as applied and facial challenges is not particularly important because Miller does not argue she was improperly denied a license, and the claim she raises fails as applied to her or as a facial challenge. "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications. So classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation." (*Bucklew v. Precythe* (2019) __ U.S. __ [139 S.Ct. 1112, 1127].)

4

"good cause" requirement is severable. Moreover, the district attorney argued section 25400 remains constitutional.

The trial court sustained Miller's demurrer and dismissed the case against her "based on the language of the [*Bruen*] case . . . and the language of" section 25400.

## II. DISCUSSION

### A.    *Standard of Review*

A demurrer raises only issues of law as to the sufficiency of the accusatory pleading. (*People v. Biane* (2013) 58 Cal.4th 381, 388.) As such, we review the trial court's ruling de novo. (*People v. Perlas* (2020) 47 Cal.App.5th 826, 832.) Miller demurred to the accusatory pleading on the ground that the facts do not constitute a public offense. (See § 1004, subd. 4.)

Because this court and the Central California Appellate Project were unable to contact defendant, Miller is not represented by counsel in this appeal and did not file a respondent's brief. In these circumstances, we may decide the appeal on the record, the opening brief, and any oral argument by the appellant. (Cal. Rules of Court, rule 8.360(c)(5)(B).) Nevertheless, the appellant "still bears the 'affirmative burden to show error whether or not the respondent's brief has been filed.' " (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1078.)

### B.    *Standing*

As a threshold matter, the Attorney General contends the trial court erred when it concluded Miller had standing to challenge the constitutionality of California's firearm licensing laws.

"It is well-settled law that the courts will not give their consideration to questions as to the constitutionality of a statute unless such consideration is necessary to the determination of a real and vital controversy between the litigants in the particular case before it. It is incumbent upon a party to an action or proceeding who assails a law invoked in the course thereof to show that the provisions of the statute thus assailed are

5

applicable to him and that he is injuriously affected thereby." (*People v. Perry* (1931) 212 Cal. 186, 193.) "An individual therefore has no standing to challenge the validity of a statute unless that individual has been impacted by the enforcement of the statute." (*People v. Leung* (1992) 5 Cal.App.4th 482, 490, fn. 2.) "This rule does have limited exceptions—most commonly invoked in free speech cases." (*People v. Buza* (2018) 4 Cal.5th 658, 675.) Of note to this appeal, in the First Amendment context, "a person has the standing to challenge a statute on the ground that it delegates overly broad licensing authority to an administrative officer whether or not his conduct could be proscribed by a properly drawn enactment and whether or not he has applied for a license. One who could have obtained a license for the asking may call into question the whole scheme of licensing when he is prosecuted for failure to procure it. Standing is recognized in such a situation because of the dangers inherent in tolerating, in the realm of the First Amendment, the existence of a penal statute susceptible of sweeping and improper application." (*Burton v. Municipal Court* (1968) 68 Cal.2d 684, 688.) In *In re D.L.* (2023) 93 Cal.App.5th 144 (*D.L.*), another Court of Appeal recently concluded a defendant had standing to assert a facial challenge to section 25850 (which prohibits carrying a loaded firearm in public) based on *Bruen* despite not having sought a license or having been eligible for one due to his age. The *D.L.* court explained, it is "unclear" whether standing for defendants "charged or convicted under an allegedly unconstitutional statutory licensing framework" under which they never applied for a license is limited to First Amendment challenges and took the "more cautious view" that standing is not so limited. (*D.L., supra*, at p. 160.)

*D.L.* relied on one case outside of the First Amendment context that explained, "when a statute, valid upon its face, requires the issue of a license or certificate as a condition precedent to carrying on a business or following a vocation, one who is within the terms of the statute, but has failed to make the required application, is not at liberty to complain because of his anticipation of improper or invalid action in administration.

6

[Citations.] This principle, however, is not applicable where a statute is invalid upon its face and an attempt is made to enforce its penalties *in violation of constitutional right*." (*Smith v. Cahoon* (1931) 283 U.S. 553, 562, italics added.) In the remaining authorities Miller and *D.L.* rely upon to suggest standing is available, the challenged licensing provisions made the exercise of First Amendment freedoms contingent upon obtaining a license. (E.g., *Shuttlesworth v. Birmingham* (1969) 394 U.S. 147, 151; *Freedman v. Maryland* (1965) 380 U.S. 51, 56; *Staub v. City of Baxley* (1958) 355 U.S. 313, 319-321; *Burton v. Municipal Court, supra*, 68 Cal.2d at p. 688; *Aaron v. Municipal Court* (1977) 73 Cal.App.3d 596, 599, fn. 2.) As we will explain next, Miller's arguments regarding the constitutionality of California's firearm licensing laws have no impact on the constitutionality of the charges against her, because the Second Amendment permits prohibitions on concealed carry. We assume without deciding that Miller had standing to raise the arguments she asserted in her demurrer and deny her claim on the merits. (See *People v. Mungia* (2008) 44 Cal.4th 1101, 1143 ["As we have done in the past, we assume without deciding that defendant has standing [citations], but we deny his claim on the merits"].) We turn now to those merits.

C.    *The Constitutionality of Concealed Carry Prohibitions*

Miller argued the charges against her were unconstitutional under *Bruen*. Miller was charged with violating California's prohibition against concealed carry. (§ 25400.) She was not charged with failing to obtain a license per se, though obtaining one would have exempted her from the reach of the statute under which she was charged. (§ 25655.) Her arguments are based on the flawed premise that section 25400 is unconstitutional without a valid licensing scheme. In this case, we need not resolve Miller's questions regarding the constitutionality of California's firearm licensing statutes because, even if we were to conclude the licensing statutes are invalid, this would not render a charge under section 25400 unconstitutional as well.

7

The Second Amendment states:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the United States Supreme Court held the Second Amendment confers "an individual right to keep and bear arms" for self-defense and struck down a District of Columbia law that banned the possession of handguns in the home.  (*Id*. at pp. 595, 635.)  Nonetheless, the court explained the "right secured by the Second Amendment is not unlimited" and it is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  (*Id.* at p. 626.)  In particular, the court explained "the majority of the 19th-century courts to consider the question held that prohibitions on carrying *concealed* weapons were lawful under the Second Amendment or state analogues."  (*Ibid.*, italics added.)

*Bruen* held "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense *outside* the home."  (*Bruen, supra*, 142 S.Ct. at p. 2122, italics added; see *McDonald v. City of Chicago* (2010) 561 U.S. 742, 750, 791 [holding Second Amendment "is fully applicable to the States" through the Fourteenth Amendment].)  Further, *Bruen* clarified the test for assessing constitutionality under the Second Amendment:  "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' "  (*Bruen, supra*, pp. 2129-2130.)

New York law prohibits possessing a firearm without a license.  (*Bruen, supra*, 142 S.Ct. at p. 2122.)  The New York licensing scheme at issue in *Bruen* required that, to carry a firearm outside the home or place of business for self-defense, "the applicant must

8

obtain an unrestricted license to 'have and carry' a concealed 'pistol or revolver.' [Citation.]  To secure that license, the applicant must prove that 'proper cause exists' to issue it." (*Id*. at p. 2123.)  This requirement was interpreted by New York courts to require a demonstration of " 'a special need for self-protection distinguishable from that of the general community' " and to "generally require evidence 'of particular threats, attacks or other extraordinary danger to personal safety.' " (*Ibid*.)  A licensing officer's denial of an application was upheld if the record showed a rational basis for the decision. (*Ibid*.)

The U.S. Supreme Court explained, "The historical evidence from antebellum America does demonstrate that *the manner* of public carry was subject to reasonable regulation" and "States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly," but "[n]one of these historical limitations on the right to bear arms approached New York's proper-cause requirement because none operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose." (*Bruen, supra*, 142 S.Ct. at p. 2150.)  The court held "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." (*Id.* at p. 2156.)

The court contrasted New York's licensing regime with 43 " 'shall issue' jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability.  Meanwhile, only six States and the District of Columbia have 'may issue' licensing laws, under which authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the relevant license.  Aside from New York, then, only California, the District of Columbia, Hawaii, Maryland, Massachusetts, and New Jersey have analogues

9

to the 'proper cause' standard." (*Bruen, supra*, 142 S.Ct. at pp. 2123-2124, fn. omitted.) The court explicitly referenced California's "good cause" requirement. (*Id*. at p. 2124, fn. 2.) The court clarified that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].' . . . Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' [Citation.] And they likewise appear to contain only 'narrow, objective, and definite standards' guiding licensing officials [(]*Shuttlesworth v. Birmingham,*[*supra*], 394 U.S. [at p.] 151[)], rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,' [citation]—features that typify proper-cause standards like New York's."[3] (*Id.* at p. 2138, fn. 9.)

Critically, while *Bruen* raises constitutional concerns regarding the licensing requirements set forth in sections 26150 and 26155, it does not suggest the concealed carry prohibitions of section 25400 are unconstitutional. *Bruen* addressed only the constitutionality of New York's licensing regime—not its impact on any potential criminal charges for carrying a firearm without a license. (*Bruen, supra*, 142 S.Ct. at pp.

_____

[3] *Shuttlesworth v. Birmingham, supra*, 394 U.S. 147, which was a First Amendment case, also explained " 'that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.' [Citation.] And our decisions have made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." (*Id*. at p. 151.) Thus, footnote 9 of *Bruen* lends some indirect support to the idea that a defendant can challenge California's firearm licensing statutes without having applied for a license thereunder.

2122, 2125.)  The constitutionality of California's concealed carry prohibition is not dependent upon the constitutionality of its licensing statutes because, while a license qualifies a holder for an exemption from the concealed carry provisions, the availability of this exemption is not constitutionally necessary.  (See *People v. Flores* (2008) 169 Cal.App.4th 568, 575 [analyzing constitutionality of former section 12025 under *Heller* without reference to availability of license]; *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 311-314 [same].)  We agree with the Attorney General that the post-*Heller* opinions upholding the constitutionality of section 25400 were not abrogated by *Bruen*.  This is because they were already based on the understanding that prohibitions on concealed firearms have historically been permitted by the Second Amendment.  (*Flores, supra*, at p. 575; *Yarbrough, supra*, at pp. 313-314; see *Heller, supra*, 554 U.S. at p. 626 ["the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues"]; *Robertson v. Baldwin* (1897) 165 U.S. 275, 281-282 [stating in dicta, "the right of the people to keep and bear arms (art. 2) is not infringed by laws prohibiting the carrying of concealed weapons"].)  This remains true and is the dispositive inquiry after *Bruen*.  (*Bruen, supra*, at pp. 2129-2130.)  In the trial court, Miller relied upon the portions of *Bruen* that recognized a historical understanding that concealed carry prohibitions were constitutional if a state did not similarly prohibit open carry.  (See *id.* at pp. 2146-2150.)  These citations are ultimately unhelpful to Miller's situation because *Bruen* did not suggest that where a state bans both concealed and open carry (or all carry), the concealed carry provisions are unconstitutional.  Rather, *Bruen* quoted a Georgia case explaining that to the extent a statute that prohibited concealed carry also prohibited open carry, it was the *open* carry provision that conflicted with the Constitution and was void.  (*Id.* at p. 2147, quoting *Nunn v. State* (1846) 1 Ga. 243, 251.)  This conclusion controls the outcome of this case.  Whatever constitutional defects may currently exist elsewhere in California's multifaceted statutory scheme regulating

firearms, section 25400 is not itself unconstitutional because of them. To the contrary, Miller's arguments that California's licensing scheme is invalid, if meritorious, would suggest other statutes such as the open carry prohibitions in sections 25850 and 26350 are unconstitutional, but the concealed carry prohibitions in section 25400 would remain valid post-*Bruen* because California would effectively no longer ban open carry. (See *Peruta v. County of San Diego, supra*, 824 F.3d 919, 942 ["If there is a Second Amendment right of a member of the general public to carry a firearm openly in public, and if that right is violated, the cure is to apply the Second Amendment to protect that right. The cure is not to apply the Second Amendment to protect a right that does not exist under the Amendment."].) Therefore, the trial court erred in sustaining Miller's demurrer and dismissing the charge against her.

## III. DISPOSITION

The superior court's order sustaining Miller's demurrer and dismissing the charge against her is reversed. The matter is remanded to the superior court with directions to overrule the demurrer and reinstate the case against Miller.

/S/

_____

RENNER, J.

We concur:

/S/

_____

ROBIE, Acting P. J.

/S/

_____

KRAUSE, J.